182 So.2d 728 (1966)
Mrs. Ruth Leopold BARNETT et al.
v.
BARNETT ENTERPRISES, INC.
No. 2153.
Court of Appeal of Louisiana, Fourth Circuit.
February 7, 1966.
*729 Rene H. Himel, Jr., New Orleans, for relator.
Steeg & Shushan and Montgomery, Barnett, Brown & Read, New Orleans, for respondents.
Before YARRUT, CHASEZ and HALL, JJ.
HALL, Judge.
We issued certiorari herein on the relation of the defendant corporation in order to review a judgment of the Judge of Division "F" of the Civil District Court for the Parish of Orleans rendered on November 22, 1965, on a rule to compel answers to interrogatories. Our writ was limited to a review of such judgment insofar only as such judgment would compel the disclosure of experts' opinions or conclusions obtained by defendant in preparation for trial.
The background of the case is as follows: Ten minority stockholders of Barnett Enterprises *730 Inc. pursuant to the right granted them under the provisions of LSA-R.S. 12:52 filed ten separate suits praying for judgments against the corporation for the fair cash value of their shares which they alleged to be $2,500.00 per share. Alternatively they prayed that the Court fix and determine the value of their shares and render judgments in their favor for the amount so fixed. Following answers filed by the corporation the ten suits were consolidated for trial. The corporation's answers reveal, insofar as pertinent hereto, an averment that the fair cash value of its shares does not exceed $375.00 per share (a price which it had offered to pay prior to suit in accordance with LSA-R.S. 12:52).
Prior to the consolidated cases being called for trial on the merits plaintiffs served written interrogatories on the corporation pursuant to the provisions of LSA-C.C.P. 1491. The corporation answered certain of the interrogatories and filed a list of its objections to others, attaching thereto an affidavit signed by its president in support of its objections. Plaintiffs thereupon brought a rule against the corporation to show cause why it should not be compelled to answer the interrogatories to which it had objected. The judgment rendered by the District Judge on this rule forms the subject matter of the writ issued herein.
The only portion of this judgment which is complained of by Relator is the following:
"It is ordered, adjudged and decreed that there be judgment herein * * * ordering defendant to answer the following interrogatories * * *:
"4. Furnish * * * the valuation figures shown in appraisals which defendant has in reference to each * * item of real estate owned by it."
In the affidavit attached to defendant's objections to the interrogatories there appears the following statement made under oath by its president:
"The only appraisals which defendant has of its immovable properties and shares of stock were prepared at the behest of its counsel in anticipation of and prepration for trial of this case."
This statement is nowhere disputed of record nor was it disputed by plaintiffs' counsel either in his brief or in oral argument.
The narrow question before us is whether in a minority stockholder's suit brought under the provisions of LSA-R.S. 12:52 the District Judge was empowered to compel defendant to answer interrogatories calling for the disclosure by defendant of the valuation figures shown in appraisals made by experts, which were obtained by it in anticipation of and in preparation for trial, in view of the prohibition contained in LSA-C.C.P. Article 1452 that:
"* * * The court shall not order the production or inspection of any part of the writing that reflects the mental impressions, conclusions, opinions, or theories of an attorney or an expert,"
and in view further of the following provision contained in LSA-C.C.P. Article 1491:
"* * * The provisions of Article 1452 are applicable for the protection of the party from whom answers to interrogatories are sought under this article."
The prohibition contained in Article 1452 is absolute. (See State Through Dept. of Highways v. Spruell, 243 La. 202, 142 So.2d 396, 400).
Plaintiffs here are not seeking the production or inspection of any writings, but seek only to have defendant to reveal in answer to interrogatories the conclusions arrived at by its experts. While the Article 1452 in terms refers only to writings we are of the opinion that what the Legislature must have intended to forbid was the revelation of any of the conclusions of experts and not merely the physical viewing or *731 copying of their writings. We cannot hold that the Legislature intended on the one hand to forbid the production or inspection of any part of the writing that reflects the conclusions or opinions of an expert and on the other hand to permit such conclusions or opinions to be obtained by oral depositions or by answers to interrogatories. To so hold would lead to the absurdity of shielding the physical writing from view while permitting the revelation of its contents, and would result from a practical standpoint in the complete nullification of the prohibition contained in Article 1452.
The District Court's judgment orders defendant to furnish "the valuation figures shown in appraisals." In other words it orders the furnishing of the "conclusions" and "opinions" of defendant's experts. A party called upon to answer interrogatories under the provisions of Article 1491 is entitled in our opinion to the "protection" of all of the provisions of Article 1452 including protection against being compelled to reveal in any manner the conclusions or opinions of its experts or attorneys obtained or prepared in anticipation of litigation or in preparation for trial.
It is true that in State Through Dept. of Highways v. Spruell, 242 La. 202, 142 So. 2d 396; and in State Through Dept. of Highways v. Riverside Realty Co., Inc., La.App., 152 So.2d 345, discovery depositions were permitted to be taken of real estate experts concerning appraisals made by them in preparation for trial but these two cases were condemnation proceedings brought by the State Department of Highways. Condemnation proceedings brought by the Department of Highways are sui generis in that the conclusions of its expert appraisers as to the value constitute an essential part of its initial pleadings and are thus made a matter of public record ab initio. Mention is made of this fact in note 7 on page 400 of the report of the Spruell case. Moreover the opinion in the Spruell case took pains to point out that the order which it approved "* * * did not direct the witness to answer any questions that reflect his mental impressions, conclusions, opinions, or theories."
Plaintiffs seem to recognize that State Highway condemnation proceedings differ from other cases in that the conclusions of its experts must be revealed in its original petitions. However plaintiffs contend that the instant case may be analogized to the Spruell and Riverside cases in that "the conclusion of the expert who appraised the Barnett stock has already been divulged by their alternative offer of $375.00 per share" and argue that they are therefore entitled in line with the decisions in those cases to discovery of the elements upon which this value was based including the valuation of its real estate. The short answer to this contention is that the figure of $375.00 per share does not purport to be the conclusion or opinion of any expert but is merely a statement required by LSA-R.S. 12:52 to be made by the corporation of "the value it will agree to pay" for the stock.
Plaintiffs contend that they as shareholders owning more than 2% of all outstanding shares of the corporation are entitled under the provisions of LSA-R.S. 12:38, subd. E "to examine * * * any and all of the books and records of the corporation, and to make extracts therefrom" and that they are therefore entitled to obtain discovery of the valuation placed on the corporation's real estate by its experts in anticipation of or in preparation for trial of this case.
The record reveals that plaintiffs have endorsed their stock certificates to the corporation and have placed the endorsed certificates in escrow "to be delivered to the corporation upon the payment of the value" thereof all in accordance with the provisions of LSA-R.S. 12:52. The effect of such action on their status as stockholders is a matter upon which there seems *732 to be a diversity of opinion. In some jurisdictions having similar laws the view is taken that after a stockholder has demanded payment for his shares he loses all rights as a stockholder except the right to receive payment therefor. In other jurisdictions stockholder rights cease only after payment for the shares has been received. (See Fletcher, Cyclopedia Corporations, Vol. 13, § 5905, p. 357) This matter has not been considered by any of the Courts of this state and we see no necessity for doing so here because plaintiffs have not been denied the right to examine any of the ordinary books and records of the defendant corporation. In fact they have already obtained or have Court orders to obtain all of the information desired by them. None of these Court orders is in contest here except the order to obtain discovery of the valuation figures shown in appraisals which defendant's experts prepared in anticipation of and preparation for trial of this case.
Plaintiffs and defendant are dealing at arm's length. They have now become adversaries in a law suit, and we see no reason why their procedural rights should not in all respects be governed by the same provisions of law which are applicable to all other law suits. We do not hold that the discovery articles in question here have the effect of repealing the provisions of LSA-R.S. 12:38, subd. E for we find no irreconcilable conflict between them. LSA-R.S. 12:38, subd. E in terms authorizes inspection of corporate records by a stockholder only "for a proper * * * purpose," and we hold that the discovery of appraisals (or the conclusions or opinions) of experts obtained in anticipation of and in preparation for trial is not a "proper purpose" since such discovery is a violation of the law as expressed in LSA-C.C.P. Article 1452.
For the foregoing reasons it is ordered that that part of the judgment of November 22, 1965 complained of by Relator which orders the defendant to furnish "the valuation figures shown in appraisals which defendant has in reference to each such item of real estate owned by it" be and the same is hereby voided and annulled. It is further ordered that this case be remanded to the District Court for further proceedings according to law consistent with the views herein expressed; plaintiffs-appellees to pay the costs of this appeal.
Judgment annulled in part, and case remanded.
YARRUT, Judge (dissenting).
Plaintiffs, as owners of more than 30% of the capital stock of Defendant corporation, allege the purposes for which Defendant corporation was organized were changed at a meeting of shareholders by an affirmative vote of less than 80% of the voting power; that Plaintiffs voted against the amendment and are entitled, as of the date preceding the shareholders' meeting, to the fair cash value of their shares since they complied with the requirements of LSA-R.S. 12:52, which provides, inter alia, that in those situations in which the corporation has authorized a sale, lease or exchange of the entire assets, a merger or consolidation with another corporation, an amendment which materially changes the corporate purposes or changes the rights of the holders of any outstanding shares, or an amendment which extends the term or the corporate existence, the non-assenting shareholders may demand the fair cash value of their shares as of the day before the vote on the transaction was taken. However, this right is subject to two conditions: (1) the corporation must be able to meet its liabilities which have matured; and (2) the corporate action must have been adopted by less than eighty percent of the voting power of the shareholders (or a larger percentage as the articles may provide). The shareholder does not have the right to demand the fair cash value of his stock when the corporation has *733 authorized only a reduction of its capital stock.
The statute sets forth a definite procedure which the shareholder must follow in order to obtain payment of the value of his shares. Within twenty days after the vote on the transaction, the non-assenting shareholders must file a written objection to the action, stating the value they demand for their shares. In addition, they must endorse the certificates of stock and deposit them in escrow in a chartered bank. The corporation, if it does not wish to pay the value demanded by the shareholders, must, within twenty days after receiving the shareholders' objections, notify the shareholders of its disagreement and state the value which it will pay. If the shareholders are not satisfied with the value offered by the corporation they must, within sixty days, file suit in the district court against the corporation (or the new or surviving corporation) and pray for a summary decree fixing the fair cash value of their shares.
The statute is silent as to what factors are to be considered by the court in determining the "fair cash value" of the shares. The fact that the value is to be determined as of the day before such vote was taken, indicates that the determination shall exclude any appreciation or depreciation caused by the consummation of the transaction in which the shareholders refused to participate. The courts in a number of states have considered all the factors of value which would be considered by practical and experienced businessmen in estimating the value of the company as a going concern and, as an incident thereof, the value of its shares as an investment. Such factors include the size of the company, its earning power and future prospects, its goodwill, the rate and regularity of dividends, the management and reputation of the company, the contracts and leases connected with the business, the savings of freight due to the advantageous location of the properties, business connections in other parts of the country and abroad, the competitive advantages, and the limited demand for the purchase of large business enterprises.
Defendant was ordered by the district court to answer Plaintiffs' interrogatories asking for the report given the Corporation by its experts as to the fair market value of its shares, as well as a detailed book value of its assets on that date. The Corporation applied for, and was granted, a writ of certiorari to determine whether the trial judge should be ordered to recall his order on the ground expert opinions etc. are privileged under LSA-C.C.P. art. 1452 which provides, inter alia:
"The court shall not order the production or inspection of any writing obtained or prepared by the adverse party, his attorney, surety, indemnitor, expert, or agent in anticipation of litigation or in preparation for trial unless satisfied that denial of production or inspection will unfairly prejudice the party seeking the production or inspection in preparing his claim or defense or will cause him undue hardship or injustice. The court shall not order the production or inspection of any part of the writing that reflects the mental impressions, conclusions, opinions, or theories of any attorney or an expert."
Although Plaintiffs are owners of more than 30% of the corporate stock, and ordinarily would have a right, under Title 12, verbo "Corporations & Associations," LSA-R.S. 12:38, to examine:
"* * * any and all of the books and records of the corporation, and to make extracts therefrom * * *".
Defendant contends Plaintiffs lost this right as stockholders when they demanded the right to surrender their shares; which demand terminated their status as stockholders. This contention is without merit. Plaintiffs, as shareholders, have the statutory right to examine all the books and records of the Corporation, relative to the value *734 of their shares, until the Corporation has met and paid for their stock. The right of Plaintiffs is substantive, governed by LSA-R.S. 12:38, and not diminished in any manner by the procedural rule of LSA-C.C.P. 1452; which in no manner can be interpreted as an expressed or implied amendment of the substantive statute granting the right to stockholders to inspect the corporate books and records.
Shareholders, who are qualified to examine the books and records of the corporation under LSA-R.S. 12:38, have the right to use the discovery proceeding, under LSA-C.C.P. art. 1491 even to obtain opinions given by experts concerning the value of the corporate shares, when in litigation with the corporation under LSA-R.S. 12:52. LSA-C.C.P. art. 1452 is only applicable where a shareholder is engaged in litigation, ex contractu or ex delicto, unrelated to his status as a shareholder, with the corporation.
Even if the Plaintiff shareholders did not have a substantive right to the information they seek, they would not be precluded from obtaining it by LSA-C.C.P. art. 1452 which only prohibits the court from ordering "the production or inspection of any part of the writing that reflects the mental impressions, conclusions, opinions, or theories of an * * * expert." The trial court did not order the production of any expert writings, reports, or documents, but only that the Plaintiffs be given an appraisal of the Corporation's immovable property and the method used in reaching that appraisal, viz.:
"The amount of depreciation taken as of March 21, 1961 and the depreciation methods and rates applied for tax, accounting, or other purposes; and the valuation shown in appraisals which defendant has in reference to each item of real estate owned by it."
To deny Plaintiffs the right to obtain this data would, in effect, deny them the right to call for the production of the audit of the Corporation's affairs, made by its certified public accountant.
According to the historical note under LSA-C.C.P. art. 1452 concerning LSA-R.S. 13:3762 (the source of article 1452 and almost identical with it) the prohibition against ordering the production of the writing of an expert does not prohibit the taking of a deposition of that expert. The note says, inter alia:
"However, the question of whether the deposition of an expert (as apart from forcing him to produce his documents) can be taken has come up before the federal courts with differing views. * * * The Council decided to omit any reference to this matter, on the theory that silence would place the expert in the position of any other witness and that his deposition could be taken."
The distinction between ordering an expert to produce his documents, memoranda or reports and ordering him to answer interrogatories regarding his findings, may be a technical one, but it is consistent with the wording of the statute. Moreover, denying a stockholder the right to discover the estimated value of corporate property to determine the value of his stock simply because it is alleged that such an appraisal was made by experts, in preparation for trial, would be a strained interpretation of the article, not justified by its wording. The Code of Civil Procedure gives the trial judge much discretion as to what he shall order in pre-trial discovery. We do not consider that the trial judge has abused his discretion in this case.
The majority suggests the minority stockholders are dealing at arm's length with the Corporation, and should be treated, not as stockholders exercising their statutory rights, as such, but as any other litigants. We cannot see why the Corporation should withhold any information it has reflecting the value of its shares, in a case like this, *735 unless it has something to hide from the minority stockholders and the court.
For the above reasons, I dissent from the majority opinion because I am convinced the writ of certiorari should be recalled and the district judge permitted to proceed with his order as rendered.