311 So.2d 914 (1975)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS, Plaintiff-Appellant,
v.
Dorothy Finke MIMS et al., Defendants-Appellees.
No. 4959.
Court of Appeal of Louisiana, Third Circuit.
May 5, 1975.
*915 Jack C. Fruge, Ville Platte, Johnie E. Branch, Jr., Baton Rouge, for plaintiff-appellant.
Brittain & Williams, by Jack O. Brittain, Natchitoches, for defendants-appellees.
Before HOOD, CULPEPPER, MILLER, DOMENGEAUX, and WATSON, JJ.
MILLER, Judge.
In this expropriation case, plaintiff Louisiana Department of Highways appeals seeking a new trial because prior to trial the court ordered the parties to produce evidence not allowed under LSA-C.C.P. art. 1452. Alternatively, the Department seeks a reduction in some of the awards. Defendants Dorothy Finke Mims and James Finke Mims answered the appeal seeking an increase in the awards and attorney fees. We reverse and remand.
On finding the trial court disregarded a prohibition in LSA-C.C.P. art. 1452, we do not reach numerous issues presented by this appeal.
In a letter to all parties the trial judge set out procedural rules to be followed concerning testimony of expert appraisers and their reports in expropriation cases. These rules were to apply in all similar cases tried in that court. Here is the relevant portion of the letter.
As each of you is well aware, these expropriation cases are unduly lengthy, quite repetitious and is more of a judicial arbitration. With this in mind, the Court would like to establish some new procedural rules for the hearing of expropriation cases.
I am in favor of allowing all parties to introduce as much evidence as they think necessary to prove their cases, but find it would expedite matters quite a bit if we would or could limit the testimony of the witnesses who appear as experts with written reports which they have prepared in their study of the subject property.
What I would like to do is have plaintiff and defendant exchange the reports of their experts at least seven (7) days before the trial date for the other's examination. At the trial itself, the expert would be qualified; his report would be filed as evidence and then on direct examination, the expert would be allowed to tell the Court how many times he had seen the property or visited it, and any other pertinent information concerning his particular knowledge of the property. Then, the expert would be tendered for cross examination. This would eliminate the expert tediously answering question after question of what is already contained in his written report.
Forty-eight (48) hours before the trial, a joint written Stipulation concerning whether or not all parties accept the experts as experts; stipulations as to photographs, drawings, surveys, etc., would be covered in the Stipulation.
This is a novel experiment for this Court and the Court is open to any suggestions which may arise. Since the primary purpose of the Stipulation would be to expedite the hearing of the case, in those instances where the Stipulation is not filed with the Court forty-eight (48) hours previous to the trial date, then the Court will order a continuance and the matter will be placed on the docket at a later date.
In line with the procedure outlined in the letter, the Court ordered the Department of Highways to produce: a) any written appraisal reports filed by the appraisers utilized by the State with the State of Louisiana, covering the property taken from the Mims, b) all written documents used by the State in determining the fair market value of the property taken from the Mims, c) all written material prepared by the State or prepared for the State concerning the amount to be offered the Mims *916 as compensation for the property taken from the Mims, and d) all writing, drawings, pictures or other documents including, but not limited, to, logs kept by personnel of the State, or their appraisers, concerning the value of the property of the Mims that was taken that has to do with the State's negotiations with the Mims for this property taken from the Mims or that had to do with the value placed on the property taken from the Mims by the State, not only before the State expropriated the property, but up to the present time.
When the Highway Department's attorney stated that their experts had not reduced their reports to writing, the court refused to allow the Department to present expert testimony. The required written reports were to contain the mental impressions, conclusions, opinions and theories of the Department's experts.
The Department objected to these procedures alleging they violated LSA-C.C.P. art. 1452 which provides:
The court shall not order the production or inspection of any writing obtained or prepared by the adverse party, his attorney, surety, indemnitor, expert, or agent in anticipation of litigation or in preparation for trial unless satisfied that denial of production or inspection will unfairly prejudice the party seeking the production or inspection in preparing his claim or defense or will cause him undue hardship or injustice. The court shall not order the production or inspection of any part of the writing that reflects the mental impressions, conclusions, opinions, or theories of an attorney or an expert. (Emphasis added.)
The Department applied to this court for supervisory writs which were denied with this statement: This Court will not interfere with orderly proceedings in the trial court, in the absence of a showing of irreparable injury. Relator has a remedy by appeal in the event of an adverse judgment on the merits.
This was based on the rule that even though an appeal may present litigants with inconvenience and delay, such injury as may be attendant thereupon, is not irreparable, and will not justify invocation of the supervisory powers of the appellate courts. Stevens v. Patterson Menhaden Corporation, 191 So.2d 692 (La.App. 1 Cir. 1966); State v. Judge of Fifth Judicial District, 29 La.Ann. 803 (1877). The majority of this court is of the opinion that forcing litigants to stand the expense and delays of a second trial is not, of itself, "irreparable injury."
The Department then applied to the Supreme Court for supervisory writs which were denied on finding there was no final judgment. The Supreme Court "will not interfere with the orderly proceeding in the trial court in the absence of a showing of extraordinary circumstances causing great harm or the showing of irreparable injury." Sanders, C.J., and Barham and Marcus, JJ., were of the opinion that a writ should be granted. State Dept. of Highways v. Mims, 283 So.2d 770 (La. 1973).
The trial judge misread these writ denials as approval of his order which ignored the express prohibition of C.C.P. art. 1452. At Tr. 39 of this record and at Tr. 66 of the companion case, the judge stated that the new procedure had been affirmed. At Tr. 173 the trial judge noted the case might have to be tried more than once, but insisted on following the challenged procedure for this trial.
The order requiring parties to exchange expert appraiser reports violates C.C.P. art. 1452. State, Dept. of Highways v. Spruell, 243 La. 202, 142 So.2d 396 (1962); State, Dept. of Highways v. Johnson, 168 So.2d 389 (La.App. 3 Cir. 1964). The prohibition forbidding the court to order production or inspection of any part of writing reflecting the mental impressions, *917 conclusions, opinions, or theories of attorneys or experts, is absolute. Barnett v. Barnett Enterprises, Inc., 182 So.2d 728 (La.App. 4 Cir. 1966); Cuccia v. Taylor, 304 So.2d 86 (La.App. 1 Cir.1974).
In an unpublished opinion, the Court of Appeal, Fourth Circuit, granted writs and ordered the trial court to recall, vacate and set aside its order requiring "all appraisal reports to be exchanged by the parties." State, Dept. of Highways v. Dawson, Inc. #6237, handed down March 18, 1974.
In State, Dept. of Highways v. Johnson, 168 So.2d 389 (La.App. 3 Cir. 1964), this court held that allowing defendants to examine written reports of plaintiff's expert violated LSA-C.C.P. art. 1452. However, we refused to remand on finding the disadvantage suffered by plaintiff did not substantially prejudice the Department.
The violation of LSA-C.C.P. art. 1492 complained of in Johnson, consisted of allowing defendant to examine the Department's expert's written reports during cross-examination at trial. The Department had previously conducted direct examination of its expert appraiser. This was a one-time violation of LSA-C.C.P. art. 1452.
We are not here concerned with an isolated error, for the trial court stated that the new procedure is to be followed in all expropriation cases until set aside by an appellate court. Johnson is further distinguished in that the order issued in this case (which disregarded the prohibition in C.C.P. art. 1452) was issued long before trial, and over the objection of one party. We cannot sanction continued violations of LSA-C.C.P. art. 1452.
Defendants contend that LSA-C.C.P. art. 1452 relates to pretrial matters and is inapplicable in this case because the Department failed to turn over their expert appraiser's written report until after trial had commenced. We reject this argument on the authority of State, Department of Highways v. Johnson, supra. The trial court stopped the trial in the instant case and refused to allow the Department to call expert witnesses until the Department complied with the court order to turn over their reports. The case was continued for trial at a later date. This procedure circumvents the protections provided by the article. Art. 1452 is not subject to the narrow interpretation urged by defendant.
The trial court also limited counsel's right to conduct direct examination of his expert witnesses. Although some direct examination (of the Department's experts) was permitted (as to qualifications and knowledge of the vicinity), the Department's expert's report was to serve as his direct testimony as to all matters relating to his appraisal. The expert's reports were not sworn statements and therefore are not considered to be admissable evidence. LSA-C.C.P. art. 1633; Interdiction of Escat, 206 La. 207, 19 So.2d 96 (1944). Unsworn statements should not be substituted for direct testimony by a witness under oath.
The new procedure places an expert appraiser in the role of advocate. His writing ability is substituted for the lawyer's responsibility.
The trial judge's primary purpose in establishing these new procedures was to reduce the time required for trial. The motive is admirable, but the court cannot require parties to give up rights recognized in the Code of Civil Procedure.
Defendants contend that even if the trial court's procedures were improper, defendants were placed at the same disadvantage or prejudice, if any, since they also had to disclose the contents of their expert's reports. Defendants, in effect, argue the "harmless error" rule.
The reviewing court must be convinced of the justice of the verdict and judgment and of the fact that the error *918 complained of did not contribute to the injury of any substantial rights before it may affirm notwithstanding error. When an absolute right of appellant as to which the court had no discretion is denied, a presumption of prejudice results. C.J.S. Appeal 1677, p. 697.
C.C.P. art. 1452 has uniformly been interpreted as prohibiting trial courts from ordering experts to disclose writing which reflects the mental impressions, conclusions, opinions, or theories. The trial court has no discretion. When one party seeks to protect his rights he is entitled to relief. Defendants have failed to rebut the presumption of prejudice. Having held the Department's remedy was by appeal in the event of adverse judgment, we must correct the error now that the appeal has been perfected.
In addition to the error relating to C.C.P. art. 1452, we hold that at the new trial, each party is entitled to present their expert's evidence by direct examination as to all phases of their report.
The trial court judgment is reversed and set aside and the case is remanded for a new trial. Costs of this appeal are assessed half to each party. The State's obligation to pay costs is subject to LSA-R. S. 13:4521.
Reversed and remanded.
WATSON, J., dissents and assigns written reasons.
WATSON, Judge (dissenting):
With respect, I dissent from the decision to reverse and remand this case for a new trial. Briefly stated, my reasons are: first, I am not convinced that the trial court committed error in ordering the exchange of appraisers' reports at the beginning of trial; and second, I am absolutely certain the error, if one were committed, will not be corrected by ordering a new trial.
The history of this litigation involves two expropriation suits; they will be referred to in the singular for simplicity. The suit was filed on February 28, 1972, by the Department of Highways under the "quick taking statute" expropriating property belonging to the Mims. Various attachments required by law were filed along with the petition, including the required "estimate of just compensation" stating the appraised value of the property taken, which was signed by Willet and Toups, the appraisers for the Department of Highways, and the right-of-way engineer.
Pleadings were filed on behalf of the Mims putting at issue various aspects of the taking but especially contesting the question of damages.
The trial court issued a pre-trial order requiring both sides to exchange the written appraisal reports of their experts and requiring the parties to introduce the appraisal reports in lieu of direct testimony of the experts; however, the trial court allowed cross-examination and re-direct examination of these experts.[1]
The Department of Highways objected to this order and applied to the Court of Appeal, Third Circuit, for supervisory writs which were denied on the basis that there was no showing of irreparable injury. The Department of Highways then applied to the Louisiana Supreme Court for writs which denied the application on substantially the same basis with three dissents.
The matter went to trial on February 6, 1974, and it is significant that the reports of the experts were actually exchanged at 11:10 a.m. on February 5, 1974, according to the trial court. (TR. 78) As noted above, the trial court required the parties *919 to introduce the written reports as the testimony in chief of their expert appraisers (allowing questioning on direct as to qualifications and incidental issues), followed by cross-examination, and then allowed the parties to conduct re-direct examination of their experts.
The issue of error in not allowing direct examination is illusory, because there appears to have been no limitation on the actual testimony from the experts, although I have no doubt that the length of trial, the repetition of testimony, the reading of reports, and the like were shortened considerably, which was the goal of the trial court in adopting the particular procedure in question.
The decision of the trial court assigned values somewhat in excess of the amounts deposited by the Department of Highways, and the Department appealed, contending that it was prejudiced by being required to produce its reports.
Prejudice to Department of Highways
The first basic issue is whether the plaintiff's rights were substantially prejudiced. Several factors militate against the Department's contention in this regard. These include the fact that not only the Department of Highways but also the defendants were ordered to produce their appraisal reports and any resulting prejudice was shared. Stated conversely, any supposed advantage given the defendants was enjoyed also by the Department. Only the Department of Highways has complained, but defendants had their land taken away, had a considerably smaller sum deposited in the registry of the court than they contend the land is worth, and are only receiving legal interest. They desire, for understandable reasons, to conclude the proceedings as quickly as possible, and therefore defendants do not contest the production of reports. The reports of the experts are relevant to an issue raised by defendants in regard to the failure of the Department of Highways to negotiate in good faith. Also, the contents of the reports by the Department's experts are relevant to defendants' contention that the Department deposited a smaller amount of money than the values placed on the properties by its own experts.
Another factor to be considered in determining whether there was prejudice to the Department of Highways is that the constitutional and statutory law of Louisiana required the disclosure of its experts' opinions under the quick-taking expropriation procedures in that a certificate as to the value was a constitutionally mandatory attachment to the petition filed by the Department of Highways. Quaere: can discovery be utilized to examine how a required appraisal was made?
A final consideration in connection with the Department's contention of prejudice is the content of the appraisal reports themselves. It is questionable whether these reports fall within the definition of LSA-C.C.P. art. 1452 when it speaks of a writing prepared in anticipation of litigation or in preparation for trial that reflects the mental impressions, conclusions, opinions or theories of an expert. The reports obtained by the Department of Highways are prepared for the purpose of expropriation, the basic idea being that a fair appraisal will be made which will be acceptable to the landowner so that litigation will be unnecessary. Also, the vast majority of an appraisal report is not opinion or theory, but fact, including such matters as maps, pictures, descriptions of comparables, and explanations of appraisal methodology, which is not supposed to be theory or opinion, but a relatively scientific method of arriving at the value of property.
Discovery in modern judicial procedures should be liberally construed. Especially in expropriation litigation is there no justification for the concealment of methods or analyses. The courts have approved or rejected various theories of land evaluation.
*920 Here an inquiry by both sides into the appraisal methodology used by the various experts is most appropriate.
In State v. Spruell, 243 La. 202, 142 So.2d 396 (1962), which I respectfully suggest does not stand for the proposition of law for which it is cited by the majority, the Supreme Court held that an expert might be ordered by the trial court, during discovery proceedings, to disclose all facts upon which he based his appraisal and that he might be required to refer to written memoranda prepared by him in order to fully testify. Also, see State v. Riverside Realty Co., 152 So.2d 345 (La.App. 1 Cir. 1963).
Futility of Remand for New Trial
Assuming, however, that the rights of the Department of Highways were prejudiced by requiring a disclosure of the appraisal reports, we must face the question of what is to be accomplished by a remand. The majority does not suggest how the prejudicial error is to be corrected at a new trial, possibly because there is no way to undo whatever damage or prejudice is supposed to have resulted once the reports were disclosed.
There is ample precedent for this court to disregard any prejudicial rulings by the trial court and to proceed to review the matter on appeal. State, Department of Highways v. Johnson, 168 So.2d 389 (La.App. 3 Cir. 1964). It is well established that Louisiana does not follow the common law rule that a prejudicial ruling as to evidence necessarily requires a remand for a new trial. Broussard v. State Farm Mutual Automobile Ins. Co., 188 So.2d 111 (La.App. 3 Cir. 1966), writ refused 249 La. 713, 190 So.2d 233; U.S. cert. den., 386 U.S. 909, 87 S.Ct. 855, 17 L.Ed.2d 783. Cambrice v. Fern Supply Co., Inc., 285 So.2d 863 (La.App. 4 Cir. 1973).
The majority also rely on Barnett v. Barnett Enterprises Inc., 182 So.2d 728 (La.App. 4 Cir. 1966); and Cuccia v. Taylor, 304 So.2d 86 (La.App. 1 Cir. 1974), but I respectfully submit that these cases do not constitute authority for a remand. In Cuccia, the court recognized that experts can be deposed as to factual testimony, affirming the trial court. There was a remand in Barnett, but that case distinguished expropriation matters such as State v. Spruell, supra, as follows:
"Condemnation proceedings brought by the Department of Highways are sui generis in that the conclusions of its expert appraisers as to the value constitute an essential part of its initial pleadings and are thus made a matter of public record ab initio." 182 So.2d 731
Therefore, I find no authority for the remand of this case for another trial in district court; I also find nothing that can be done on new trial to cure the supposed defects in the procedure followed heretofore.
If there were error, and a majority of this court is convinced there was, then the error is irreparable and a suitable order should have been entered on the application for writs. If the trial court erred, then this court also erred in not granting writs. I suggest we admit our error and proceed forthwith to set the matter straight by appellate review as authorized and required by LSA-R.S. 19:13 which subjects the "whole of the judgment" to our consideration.
There is nothing that can be done now by way of remand except to chide the trial court and to demonstrate the fallibility of our judicial processes. The original suit was filed in February, 1972, and it is now more than three years later. At this juncture, we propose to start the matter anew in the trial court.
Let us hope that State, through the Department of Highways v. Mims will have a better fate than the Jarndyce case of which Dickens wrote:
"Jarndyce and Jarndyce drones on. . . ." The little plaintiff or defendant, *921 who was promised a new rocking-horse when Jarndyce and Jarndyce should be settled, has grown up, possessed himself of a real horse, and trotted away into the other world."[2]
For these reasons, therefore, I respectfully dissent.
NOTES
[1] No question has been raised by anyone concerning the laudable objectives of the trial court's order, that is, the promotion of a swift and fair resolution of the litigation.
[2] Bleak House, Charles Dickens, Dodd, Mead & Company, New York, 1951, p. 4.