493 So.2d 1249 (1986)
CENTRAL LOUISIANA BANK & TRUST COMPANY, et al., Plaintiffs-Appellants,
v.
AVOYELLES PARISH POLICE JURY, et al., Defendants-Appellees.
No. 86-709.
Court of Appeal of Louisiana, Third Circuit.
September 4, 1986.
*1250 Chris J. Roy, Alexandria, for plaintiffs-appellants.
Darrel D. Ryland, John T. Bennett, Thomas E. Papale, Marksville, Martha S. Hess, Baton Rouge, for defendants-appellees.
Before DOMENGEAUX, GUIDRY and YELVERTON, JJ.
YELVERTON, Judge.
Three banks and a private citizen of Avoyelles Parish filed suit against the police jury, its president, the parish sheriff, the Avoyelles Parish Law Enforcement District, another bank, and the attorney general of Louisiana, attacking the issuance and sale of $750,000 in a certificate of indebtedness under an intergovernmental agreement for improvements to the parish jail. A number of exceptions and rules were heard on June 27, 1986, all decided adversely to the petitioners, who appealed. We gave the case a preferential docketing as permitted by LSA-R.S. 13:5128, because it involves the validity of the issuance and sale of bonds of a governmental unit.
By means of the Omnibus Bond Authorization Act of 1985 (Act 745), the Louisiana Legislature made provision for certain priority bonds to the Louisiana Commission on *1251 Law Enforcement for parish jails, the share specifically included in the act for Avoyelles Parish being set at $2.1 million. The act further provided that before the sale of any bonds or approval of any line of credit, the parish governing authority was required to submit evidence of availability and commitment of a 30 percent local share to the Louisiana Commission on Law Enforcement and Administration of Criminal Justice, the Commissioner of Administration, and the State Bond Commission.
In order to avail themselves of the state funds, the Avoyelles Parish Police Jury, the sheriff of Avoyelles Parish, and the Law Enforcement District of Avoyelles Parish, met on April 17, 1986, and entered into an intergovernmental agreement for the acquisition, construction, operation and maintenance of an addition and renovation to the parish jail. This was done pursuant to Article VI, Section 20 of the Louisiana Constitution of 1974, and the Local Services Law, R.S. 33:1321, et seq. Approval of the bond issue had previously been obtained from the State Bond Commission.
At the same meeting on the same date, the police jury passed a resolution providing for the incurring of debt and issuance of a $750,000 certificate of indebtedness. There was an agreement between the parish and the sheriff, described in the intergovernmental agreement, that because the sheriff had an annual surplus of revenue over operating expenses, by dedicating that surplus to the police jury for use by it in paying its debt service, there would be money available each year for the police jury to retire the 10 year certificate of indebtedness. To comply with the statutory requirement, LSA-R.S. 33:2922 et seq. and to show that there in fact existed excess revenues sufficient to support the debt service, the police jury amended its current budget to reflect revenues of approximately $100,000 from the sheriff of Avoyelles Parish.
At the same meeting, that is, April 17, 1986, there was presented to the police jury from The Union Bank, one of the defendants herein, a written offer to purchase the certificate of indebtedness. Because of the relative size issue, it was a negotiated sale between the police jury and whomsoever it selected as the buyer. That offer, by a separate resolution, was accepted by the police jury. Finally, at this meeting a resolution was passed authorizing the dedication and expenditure of the funds that had already been expended for improvements on the parish jail, as well as the proceeds to be received from the sale of the certificate of indebtedness, (sums which together were sufficient to comprise the 30 percent match of the total funding), and authorizing the president of the police jury to execute a cooperative endeavor agreement with the State of Louisiana in order to receive the $2.1 million representing the state's share of the total project cost.
At the time the suit was filed attacking these proceedings, the certificate had been sold to the Union Bank, but it was not delivered, and, of course, has not been delivered because of the pending litigation.
The present suit was filed June 2, 1986. The petitioners in this suit were Central Louisiana Bank & Trust Company (CENLA), Mansura State Bank, Cottonport Bank, and Anthony J. Roy, Jr., an individual and a citizen, as well as president of CENLA. The three banks described themselves as members of a consortium, CENLA describing itself as the "lead bank and/or attorney in fact for the consortium."
The petition was styled "Petition for Declaratory Judgment, Injunctive Relief, and Breach of Contract." The petition prayed for a rule to show cause and ultimately an injunction prohibiting all defendants from selling, authorizing, transferring or conveying the certificate of indebtedness on the ground that the issuance of the certificate was ultra vires; in the alternative, if the bond issue was legal, petitioners prayed that they and not The Union Bank, be declared the fiscal agents of the police jury by virtue of a fiscal agency contract they had with the jury and, as such, entitled to all of The Union Bank's rights, title and interest to the agreement and/or resolutions; *1252 finally, petitioners prayed that there be judgment against The Union Bank in the amount of $1 million. The petitioners prayed for a jury trial of the merits of its claim against The Union Bank.
When the petition was filed there was presented to the district court, and signed by it, an order setting for hearing on June 27, 1986, a rule to show cause why a preliminary injunction should not issue, in the following language:
"I. Mandating, enjoining and restraining the Avoyelles Parish Police Jury from authorizing the sale of certificates, bonds or other securities for the purpose of constructing, operating and maintaining a prison (jail) in Avoyelles Parish to incarcerate statewide prisoners and other personnel other than those convicted for crimes in Avoyelles Parish, Louisiana, whether said conduct occurs as a consequence of the actions of Avoyelles Parish Police Jury, Bill Belt, Sheriff of Avoyelles Parish, Louisiana and/or the Law Enforcement District of Avoyelles Parish, Louisiana as being ultra vires, illegal and unconstitutional;
"II. Bill Belt, Sheriff of Avoyelles Parish, Louisiana and as director of the Law Enforcement District of Avoyelles Parish, Louisiana, should not be enjoined from constructing, maintaining or operating a prison system in Avoyelles Parish, Louisiana as ultra vires and unconstitutional;
"III. Mandating The Union Bank to comply with its fiscal agency agreement entered into between it, the consortium banks and the Avoyelles Parish Police Jury and why The Union Bank should not be mandated to deliver, convey and assign all its rights, titles and interests in the proposed certificates of indebtedness unto the consortium banks, should the Avoyelles Parish Police Jury be authorized to construct, maintain and operate a prison (jail) in Avoyelles Parish, Louisiana."
The sheriff, the Avoyelles Parish Law Enforcement District, The Union Bank, and William J. Guste, Jr., Attorney General for the State of Louisiana, filed peremptory exceptions of no cause of action, as well as other exceptions, complaining principally that the demand of the plaintiffs did not comply with R.S. 13:5121-5130, the bond validation law.
The plaintiffs countered with a "Special Plea of Unconstitutionality", attacking the constitutionality of the Bond Validation Law. On that same day, June 27, 1986, which was the date originally set for the hearing of the preliminary injunctions, the plaintiffs filed a motion to recuse the district judge hearing the case, on the ground that the judge was a material witness in the cause and interested in the cause.
The trial judge ruled in the case on June 28, 1986, the day after the hearing. The judgment:
1) denied the motion to recuse;
2) found the bond validation law constitutional;
3) sustained all exceptions of no cause of action and peremption to the rule to enjoin the sale of the certificate of indebtedness;
4) noticed sua sponte the failure of the petition to state a cause of action against the police jury to enjoin it from the sale of certificates to finance construction of an addition to the parish jail;
5) denied the rule for a preliminary injunction to enjoin the police jury, the sheriff, and the law enforcement district from constructing or maintaining an addition to the parish jail;
6) denied a mandatory injunction to order The Union Bank to transfer and assign its rights and interests in the certificate of indebtedness to CENLA, as agent for the consortium; and last,
7) denied as moot a motion to sever filed on behalf of The Union Bank.
*1253 The judgment incorporating these rulings was signed July 3, 1986. Plaintiffs appealed. We affirm.
Plaintiffs-appellants raise several assignments of error. They question the application of the bond validation law to the case, as well as whether it is constitutional. By a related assignment, they attack the trial court's ruling on a motion to recuse him. Aside from whether the certificate of indebtedness is itself valid, appellants conceive as a separate issue the question of whether the police jury can legally acquire, construct, operate and maintain a jail for statewide prisoners in Avoyelles Parish. In this connection appellants question the solvency of the police jury, and the validity of the intergovernmental agreement. We will now discuss these issues.

The Bond Validation Law
LSA-R.S. 13:5121 et seq., the bond validation law, deals with suits to determine the validity of governmental bonds. These statutes, especially Sections 5122 and 5125, set forth the exclusive procedure to be employed in all suits, actions and proceedings affecting the validity of bonds of any governmental unit, or the sale thereof. These sections read as follows:
"§ 5122. Law applicable; legislative intent
All suits, actions and proceedings of whatever nature affecting the validity of bonds of any governmental unit, or the interest thereon, or the sale thereof, or the election, if any, authorizing the issuance of said bonds shall be brought only in accordance with the provisions of this Title. These provisions shall supersede all other acts and statutes on the subject and be controlling in all such cases notwithstanding the provisions of any other law or charter to the contrary; provided, however, nothing herein contained shall affect, change, alter or modify in any way any peremptive or prescriptive period for the contesting of bonds of governmental units or elections authorizing their issuance, established pursuant to the constitution and statutes of this state which shall continue to govern the time within which actions covered thereby may be filed. It is hereby declared that it is the intention of the legislature in enacting this law to provide a uniform, expeditious and equitable procedure with due regard for the public fisc and rights of persons in interest for the judicial determination of the validity of bonds and related proceedings where material and substantial questions with regard thereto are involved or a judicial determination of issues relating to bonds is necessary to insure the marketability of bonds in investment channels. It is not the intention of the legislature to require or to encourage the validation of all bonds by the judiciary."
"§ 5125. Contesting issuance of bonds or action taken with respect to source of payment therefor; notice and hearing; service on member of governing body
"Any person, corporation or association desiring to contest or enjoin the issuance of any such bonds or action taken providing for a new or different source of payment for outstanding bonds shall proceed by motion for judgment brought in the court having jurisdiction as provided in R.S. 13:5123. Upon the filing of any such motion for judgment, the court shall enter an order requiring the publication of the motion in some newspaper published in or having general circulation in such governmental unit two times within a period of fifteen consecutive calendar days from the date of the issuance of the order specifying the dates for publication thereof, with the first publication as hereinabove provided to be not later than eight days from and after the date of the issuance of the order, and at the same time fix a time and place for hearing the proceeding, which time and place shall be published with the motion for judgment. The date fixed for the hearing shall be at least ten days, but not more than thirteen days, after the second publication of such motion for judgment. In addition to such publication, the plaintiff must secure personal service on at least one member of the governing body *1254 of the governmental unit whose actions or proceedings are sought to be contested or enjoined."
In the present case, the resolution authorizing the issuance of the certificate was advertised in the official journal of the parish on May 1, 1986. Article VI, Section 35(B) of the Louisiana Constitution of 1974 says:
"(B) Contesting Ordinance or Resolution; Time Limit. Every ordinance or resolution authorizing the issuance of bonds or other debt obligation by a political subdivision shall be published at least once in the official journal of the political subdivision or, if there is none, in a newspaper having general circulation therein. For thirty days after the date of publication, any person in interest may contest the legality of the ordinance or resolution and of any provision therein made for the security and payment of the bonds. After that time, no one shall have any cause of action to test the regularity, formality, legality, or effectiveness of the ordinance or resolution, and provisions thereof for any cause whatever. Thereafter, it shall be conclusively presumed that every legal requirement for the issuance of the bonds or other debt obligation, including all things pertaining to the election, if any, at which the bonds or other debt obligation were authorized, has been complied with. No court shall have authority to inquire into any of these matters after the thirty days."
See also R.S. 33:2923 to the same effect establishing the peremption period of 30 days for the filing of such an action.
The 30-day peremption period ended on a Saturday. The suit was filed the following Monday, June 2, 1986. Thus the proceedings, had they not been otherwise infirm, would have been commenced timely within the peremption period, LSA-C.C. arts. 59 and 3454.
The trial court held that the pleading was a nullity, however, because it was not filed in accordance with the provisions of the bond validation law, relying on Lege v. Vermilion Parish School Board, 360 So.2d 664 (La.App. 3rd Cir.1978). In the Lege case this court held that a proceeding to attack a bond electionlikewise governed by the Bond Validation Act, though the peremption period is 60 days, La. Const. 1974, Article VI, Section 35(A) is an absolute nullity if the pleading is not filed in accordance with the provisions of 13:5121 et seq., and if the pleading was neither published nor personally served in accordance with those statutes.
In the present case the petitioners filed a pleading seeking a declaratory judgment, an injunction, and damages. The body of the petition made no reference to the requirement of publication of the motion as made by R.S. 13:5125, nor did the petitioners pray for an order directing publication as required by that statute. Similarly, neither in the body of the petition nor in the prayer was the process server notified of the necessity of personal service on at least one member of the governing body of the governmental unit whose actions or proceedings were sought to be contested or enjoined. Moreover, the only order that was attached to the pleading and presented to the judge for signature was one setting a date for hearing of a rule to show cause as to the three above-quoted matters the plaintiffs wanted heard on that date. The order which was prepared by plaintiffs and presented to the judge for his signature simultaneously with the filing of the pleading did not order publication of the motion for judgment as required by the statute, nor did it order personal service as required by the statute. In fact, the bond validation law was not cited or otherwise mentioned in either the pleading or the order presented to the court for its signature. The judge, in complete compliance with the petitioners' desires as demonstrated by their pleadings, simply set a date for a hearing as requested, and the matter took its course from there. As a result, there was neither publication nor proper service. On June 18, 1986, after the peremptive period had run, the petitioners attempted to amend their pleading to assert a motion for judgment, and otherwise comply *1255 with the requirements of the bond validation statutes, but the trial judge held that it was too late.
On the authority of Lege, and the clear language of the bond validation law, we agree that both the initial pleading and the attempted amending pleading were without effect. The original pleading utterly failed to comply with the provisions of Section 5125, provisions which Section 5122 declares constitute the exclusive procedural method of attacking the issuance of bonds. Any substantial deviation from these procedural requirements makes the filing of the pleading, as stated in Lege, an absolute nullity. The attempt to amend the pleading and cure the defects after the peremptive period had expired, under the relation back of amendments authorized by La.-C. C.P. art. 1153, also came too late because the expiration of the peremptive period foreclosed an amendment; there was nothing to amend. Lege, supra.
We agree with the trial judge that the petitioners did not comply with the procedural requirements of the bond validation law within the peremptive period for attacking this bond issue, and that the exceptions of no cause of action were properly sustained.

The Motion to Recuse
On the morning of the hearing on June 27, 1986, the plaintiffs filed a motion to recuse the district judge to whom the case had been assigned. The ground for recusation was that the judge was a material witness in the cause, LSA-C.C.P. art. 151(A)(1), and that he was interested in the cause, LSA-C.C.P. art. 151(A)(6).
If a valid ground for recusation as provided in C.C.P. art. 151 is set forth in a motion to recuse, C.C.P. art. 154 requires that the judge either recuse himself or refer the motion to another judge for hearing. The judge in this case did neither. He simply denied the motion after argument and proceeded to hear the case. Appellants assign this as error.
It is only when a valid ground for recusation is asserted that the judge must either grant the motion or refer it to another judge for hearing. When the assigned ground for recusation is objectively, patently without merit, the judge may himself deny the motion. Roy v. Roy, 285 So.2d 867 (La.App. 4th Cir.1973).
In the present case the argument for recusation appears to be that it was the responsibility of the judge to see to it that this pleading was properly published and service properly made, along with meeting the other procedural requirements of the Bond Validation Act, and that his failure to do his duty in the premises makes him a material witness in the cause, as well as having an interest in it.
We believe that these grounds unquestionably lacked merit, and that the trial judge properly denied the motion. We note in this case that no preliminary restraining order was requested and none was granted. The district judge, at the time he fixed the matter for hearing on a motion for a rule to show cause was not performing an adjudicatory function. He was performing a mere ministerial function of setting a hearing date for a motion for a preliminary injunction. We do not in this opinion attempt to expound upon the duties of an order-signing, or duty judge with respect to the setting of hearings; let it suffice to say simply that those duties do not extend to rewriting pleadings or orders presented for his signature so as to substantially change the procedural or substantive relief sought. Nor is it the function of a duty judge to analyze each pleading for its sufficiency, in a suit which by its very nature promises to be a contradictory proceeding, or to determine whether the petition does what its authors probably wanted it to do.
The procedural events speak for themselves. The trial judge was neither a material witness nor did he have an interest in the cause. These were not valid grounds for recusation. The trial judge properly summarily dismissed the motion.

The Constitutionality of The Bond Validation Law
Appellants make the broad charge that the bond validation law violates *1256 the equal protection, due process, and access to courts clauses of the state constitution because the law "makes it more onerous for litigants to utilize the courts and/or treats litigants differently." They cite Detraz v. Fontana, 416 So.2d 1291 (La.1982).
Detraz struck down a law that required litigants who sue public officials to post bonds for the defendant's attorney fees. The Louisiana Supreme Court held the law violated equal protection because it unreasonably distinguished between litigants on the basis of whether they were private citizens or public officials. The court held that the burdensome impact of the cost bond provision also denied litigants due process and open access to the courts.
What appellants complain about in the bond validation law are the requirements of advertisement and personal service in suits attacking a bond issue. It is said that advertisement (publication) serves no useful purpose and that this operates as an unfair restraint on litigants who sue to invalidate bond issues. There is no support for this argument. The purpose of newspaper notice is clear: every citizen is entitled to notice because the suit is about a subject that affects the public generally. The statute itself declares that the publication notice is a form of service on interested persons. Nor is this requirement a burdensome one. All that the litigant need do is provide for the publications in an order to be signed by the judge, and the clerk of court and sheriff will carry out their duties with respect to this method of service just as is routinely done with service of process in every lawsuit.
Appellants' argument that the requirement of personal service on at least one member of the defendant public body brands the statute unconstitutional, is a strained one: it suggests that the language of the statute puts the duty on the litigants, rather than the sheriff, to effectuate service, with the result that the litigant has to involve himself with the functions and powers of the judiciary. The statute (R.S. 13:5125) says:
"In addition to such publication, the plaintiff must secure personal service on at least one member of the governing body...."
La.C.C.P. art. 252 requires that the clerk of court shall issue all citations and other process of the court, and C.C.P. art. 321 directs the sheriff, as the executive officer of the court, to serve citations and other process, and execute the orders and judgments of the district court. R.S. 13:5125 does not conflict with these procedural statutes. It merely tells the litigants that personal rather than domiciliary service is required in such a suit on at least one member of the defendant public body. All that the litigant has to do is pray for such service in his motion for judgment, and incorporate into the order directing publication and setting a hearing, instructions directed to the clerk and the sheriff as to the type of service required. This statute cannot reasonably be interpreted to mean that the litigant must accomplish the service himself.
The constitution does not demand that the procedural requirements be exactly the same for every type of litigation. United States v. Kras, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973). There is a rational basis for requiring that in bond validation (or invalidation) proceedings the pleading be published in a newspaper in the area affected, and that personal service be had on at least one member of the defendant governmental unit. The act does not violate equal protection, due process, or access to the courts. We hold that the act is constitutional.

The Validity of the Intergovernmental Agreement
This issue, as well as the next two, need not have been addressed by the trial court in view of its decision regarding the constitutionality and application of the Bond Validation Act. By failing to follow the mandatory procedures under the bond validation law, appellants' right to bring any suit, action and proceeding, of whatever nature, affecting the validity of this certificate of indebtedness, was perempted. *1257 See R.S. 13:5122, supra. The validity of the intergovernmental agreement, the authority of the police jury to build or add to jails, and the fiscal soundness of the dedication of revenues for the resulting debt serviceall three issues affected the validity of the issuance of the certificate of indebtedness. They were issues raised in the initial pleading as grounds for holding the bond issue invalid. A ruling favorable to the plaintiffs on either might have doomed the bond issue. They need not have been treated by the trial judge as issues having some independent existence that did not rely for their preservation on compliance with the mandatory procedures of the Bond Validation Act. The right to attack the bond issue on any ground was perempted.
Nevertheless, because the trial judge addressed these three issues, and all counsel likewise still do, we will treat these matters as issues on appeal.
Appellants attack the bond issue as being the result of an invalid intergovernmental agreement. The agreement in the present case was made between the Law Enforcement District of Avoyelles Parish and the Parish of Avoyelles, through its governing body, the Avoyelles Parish Police Jury. Appellants argue that the Law Enforcement District does not qualify as a governmental unit under the Local Services Law, since it is but the alter ego of the sheriff, and that the bond issue should therefore be struck down because its ultimate funding source, the Law Enforcement District, cannot legally participate in an intergovernmental function. We reject this argument.
Under the Local Services Law parishes and municipalities may act jointly to do what either one of them can do individually. R.S. 33:1324. A municipality is defined in Section 1321 to include special districts created to perform one or more public functions or services. The Avoyelles Parish Law Enforcement District was created by the legislature by Act 689 of 1976 (R.S. 33:9001 et seq.) as "a special district to be known as a Law Enforcement District for the purpose of providing financing to the office of sheriff for that parish." R.S. 33:1323 requires that the Local Services Law be construed liberally in favor of intergovernmental functions. We agree with the trial court that under these various statutory provisions a law enforcement district and a parish may agree to jointly fund the construction or improvement of a jail.
The responsibility of providing a jail in Avoyelles Parish rests with the police jury. R.S. 33:4715; R.S. 15:702; Amiss v. Dumas, 411 So.2d 1137 (La.App. 1st Cir.1982), writ denied 415 So.2d 940 (La.1982). The very existence of the Law Enforcement District of Avoyelles Parish is for the purpose of providing financing to the office of sheriff for the parish. The sheriff is the keeper of the jail. R.S. 15:704; Amiss v. Dumas, supra.
The trial court held that the intergovernmental agreement of April 17, 1986, between the police jury and the law enforcement district was a valid exercise of the Local Services Law, and so do we.

Ultra Vires Conduct of Police Jury
Appellants next attack the undertaking as ultra vires, arguing that the police jury has the power to build parish jails for the housing of parish prisoners, but that the expansion of this jail contemplated housing prisoners from other parishes, or state prisoners, and that this was ultra vires, dooming the entire undertaking.
The argument is that the parish of Avoyelles is simply without authority to construct a statewide prison. This argument is based upon some evidence that the sheriff of Avoyelles Parish intends to house, and be reimbursed therefor, parish prisoners awaiting removal to the state corrections system, as well as prisoners from other parishes. The transfer of prisoners from jails of another parish is already authorized by R.S. 15:706; see also, State v. Vessel, 389 So.2d 1333 (La.1980). The sheriff of Avoyelles Parish testified in this case that the present jail does in fact house prisoners awaiting transfer to the state *1258 corrections system, as well as prisoners transferred from other parishes. He also testified that those numbers were expected to increase. We cannot label ultra vires the planning, acquisition, construction and/or renovation of parish jails based on anticipation of housing requirements that are statutorily authorized. In the absence of fraud, oppression or gross abuse, it is not for the courts to substitute their judgment for that of the police jury authorized by law to perform some governmental function. Caz-Perk Realty v. Police Jury of East Baton Rouge Parish, 35 So.2d 860 (La.1948); Stone v. Police Jury of Calcasieu Parish, 77 So.2d 544 (La.1954). We agree with the trial judge that there has been no showing in the present case that it was beyond the power of the Police Jury of Avoyelles Parish to undertake the expansion and renovation of the parish jail.

The Attack on the Fiscal Wisdom of the Undertaking
As we have observed earlier in this opinion, the police jury has the authority to build jails; it has the authority to enter into intergovernmental agreements with other municipalities or public bodies; it has the authority to issue a ten year certificate of indebtedness; it has the authority to dedicate excess revenues to service the debt thereby created; and it has found those excess revenues in the form of an intergovernmental agreement with Law Enforcement District of Avoyelles Parish to service the debt on an annual basis. There was conflicting opinion testimony in this case as to the fiscal soundness of this undertaking. The courts do not usurp the functions of the police jury and other local governing bodies in making these legislative and executive decisions, for all the same reasons we have heretofore explained.
For the foregoing reasons, the judgment of the trial court is affirmed. Plaintiffs-appellants will pay the costs of this appeal.
We are here affirming all of the rulings of the trial court addressed to the dispute between the plaintiffs and all of the defendants, including the denial of a temporary mandatory injunction against The Union Bank, an issue which appellants raised but abandoned on appeal. The claims by plaintiffs against The Union Bank for a permanent mandatory injunction and for damages, for which plaintiffs asked for a jury trial, were not reached by the trial court and remain pending. We remand that portion of the case for further proceedings.
AFFIRMED AND REMANDED.