STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

05-1478 C/W 05-1505


BELLSOUTH TELECOMMUNICATIONS, INC.

VERSUS

THE CITY OF LAFAYETTE AND
THE LAFAYETTE PUBLIC UTILITIES AUTHORITY

CONSOLIDATED WITH

ELIZABETH W. NAQUIN AND
MATTHEW B. EASTIN, ET AL.

VERSUS

LAFAYETTE CITY-PARISH CONSOLIDATED
GOVERNMENT AND THE
LAFAYETTE PUBLIC UTILITIES AUTHORITY

********

APPEALS FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NOS. 05-5245, 05-5218
HONORABLE DURWOOD CONQUE, DISTRICT JUDGE
HONORABLE G. BRADFORD WARE, DISTRICT JUDGE, *PRO TEMPORE*

********

JIMMIE C. PETERS
JUDGE

********

Court composed of Jimmie C. Peters, Marc T. Amy, and James T. Genovese, Judges.


REVERSED IN PART; RENDERED IN PART; DISMISSED IN PART.


Gary J. Russo
Camille Beinvenue Poche
Kyle M. Bacon
Perret Doise, A.P.L.C.
600 Jefferson Street, Suite 1600

Lafayette, Louisiana 70502-3408
Telephone: (337) 262-9000
COUNSEL FOR PLAINTIFFS/APPELLANTS:
     Bellsouth Telecommunications, Inc.

Edward H. Bergin
Jones, Walker, Waechter,
Poitevant, Carrere & Denegre, L.L.P.
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana 70170
Telephone: (504) 582-8222
COUNSEL FOR PLAINTIFFS/APPELLANTS:
     Bellsouth Telecommunications, Inc.

Patrick S. Ottinger
Post Office Box 4017-C
Lafayette, Louisiana 70502
Telephone: (337) 232-7232
COUNSEL FOR DEFENDANTS/APPELLEES:
     City of Lafayette, Lafayette City-Parish Consolidated Government,
     and Lafayette Public Utilities Authority

Stan P. Baudin
Patrick W. Pendley
Pendley Law Firm
24110 Eden Street
Plaquemine, Louisiana 70764
Telephone: (225) 687-6396
COUNSEL FOR INTERVENORS/PLAINTIFFS/APPELLANTS:
     Elizabeth W. Naquin and Matthew B. Eastin, et al.

Christopher D. Shows
Pierce & Shows, A.P.L.C.
601 St. Joseph Street
Baton Rouge, Louisiana 70802
Telephone: (225) 388-9574
COUNSEL FOR INTERVENORS/PLAINTIFFS/APPELLANTS:
     Elizabeth W. Naquin and Matthew B. Eastin, et al.

Andre P. LaPlace
2762 Continental Drive, Suite 103
Baton Rouge, Louisiana 70808
Telephone: (225) 924-6898
COUNSEL FOR INTERVENORS/PLAINTIFFS/APPELLANTS:
     Elizabeth W. Naquin and Matthew B. Eastin, et al.

PETERS, J.

These consolidated appeals arise out of certain judgments and rulings rendered by separate divisions of the Fifteenth Judicial District Court, Parish of Lafayette, in two different causes. Bellsouth Telecommunications, Inc. (Bellsouth) seeks review of the denial of its motion for judgment by the district court's division G in docket number 05-5245. In its motion for judgment, Bellsouth challenged the validity of the Lafayette City-Parish Consolidated Government's (City) bond revenue ordinance for the development of a government-run communications network.[1] In doing so, Bellsouth sought to have the ordinance declared invalid and to have the City enjoined from issuing the bonds authorized under the ordinance pending compliance with applicable law. Bellsouth argued that the bond ordinance violated the cross-subsidization provisions and single enterprise fund requirement of the Local Government Fair Competition Act, La.R.S. 45:844.41-45:844.55 (Fair Competition Act). The district court dismissed Bellsouth's motion for judgment on the basis that the bond ordinance was not in violation of the Fair Competition Act.

The City has answered Bellsouth's appeal, requesting review of certain other rulings of the district court. Specifically, the City contends that the district court erred when it failed to consider proffered evidence of documents filed by Bellsouth and the general orders that were issued by the Public Service Commission during administrative rule-making hearings on the Fair Competition Act. The City also asserts that the district court erroneously concluded that the Fair Competition Act does not recognize its purported use of residual revenues from the existing utilities system as a loan.

---

[1] Although the Lafayette Public Utilities Authority is also a defendant in this litigation, the issue now before this court involves only the interpretation of the ordinance enacted by the Lafayette City-Parish Consolidated Government.

Additionally, Lafayette residents Elizabeth A. Naquin and Matthew B. Eastin seek review of the judgment dismissing their motion for judgment in docket number 05-5218 by the district court's division B, which appeal has been consolidated with Bellsouth's appeal. Naquin and Eastin sought relief similar to that requested by Bellsouth. The district court, division B, dismissed Naquin and Eastin's motion based on their intervention in the Bellsouth case and the effect of the judgment rendered by the district court in that case. On appeal, Naquin and Eastin argue that, although they had been allowed to intervene in the Bellsouth proceedings, they were permitted to do so only regarding the issues that had been commonly asserted by the parties in their separate motions for judgment. Thus, they contend that the district court's dismissal of their motion erroneously deprived them of a hearing on issues that were not the subject of the motion for judgment filed by Bellsouth. The City has filed a motion to dismiss the appeal and, in the alternative, an exception of lack of subject matter jurisdiction, both of which urge that the appeal is untimely. Naquin and Eastin have filed a motion for an extension of time to file their appellate brief beyond the time period proscribed by La.R.S. 13:5128, which governs challenges to bond ordinances.

We have afforded expedited consideration to these consolidated matters pursuant to La.R.S. 13:5128.[2] For the reasons stated below, we reverse the judgment of the district court dismissing Bellsouth's motion for judgment and grant Bellsouth's request for relief by enjoining the City from issuing the bonds authorized under the ordinance pending the City's compliance with applicable law. We also dismiss the

_____

[2]Louisiana Revised Statutes 13:5128 requires the court of appeal to hold a hearing no later than seven days after the appellee's reply brief is filed with the court and to render a decision no later than seven days following the hearing.

2

appeal of Naquin and Eastin as untimely. Otherwise, we affirm the district court rulings in all other respects.

## ISSUES

This appeal requires the determination of the following issues:

Bellsouth's appellate issues:

(1)     Does the City's bond revenue ordinance violate the Fair Competition Act's cross-subsidization provisions by proposing to use residual revenue from existing utility services to repay bonds without an event of default?

(2)     Does the City's bond revenue ordinance violate the Fair Competition Act by creating five funds to account for the operation of the new communications system services rather than creating a single enterprise fund?

The City's appeal issues:

(1)     Was Bellsouth's challenge to the bond revenue ordinance perempted such that the trial court lacked subject matter jurisdiction to hear the matter?

(2)     Should the trial court have considered the City's proffered evidence consisting of (i) two Louisiana Public Service Commission General Orders regarding accounting rules under the Fair Competition Act and (ii) two briefs filed by Bellsouth in the proceedings considering the Louisiana Public Service Commission's rules?

(3)     Did the trial court erroneously determine that under the Fair Competition Act the City's use of residual revenues from existing utilities, as set forth in the bond ordinance, does not constitute a loan?

Naquin and Eastin's appellate issues:

(1)     Is the appeal brief filed by Naquin and Eastin untimely?

(2)     Did the trial court erroneously dismiss Naquin and Eastin's pending Motion for Judgment, without allowing for determination of the issues that were not decided during the Bellsouth hearing?

## FACTUAL AND PROCEDURAL BACKGROUND

3

On July 16, 2005, the registered voters of the City approved the following proposition at a special election called for that purpose:

SUMMARY: AUTHORITY FOR THE CITY OF LAFAYETTE TO ISSUE NOT EXCEEDING $125,000,000 OF 25-YEAR REVENUE BONDS FOR THE PURPOSE OF CONSTRUCTING, ACQUIRING, DEVELOPING, EXTENDING AND IMPROVING A LOCAL COMMUNICATIONS NETWORK THAT WILL OFFER TELEPHONE, CABLE TV, HIGH-SPEED FIBER TO THE HOME (FTTH) INTERNET AND OTHER RELATED SERVICES (THE "COMMUNICATIONS SYSTEM") AND, SHOULD THE CITY DETERMINE THAT ANY BOND PROCEEDS ARE UNNECESSARY FOR COMMUNICATIONS SYSTEM PURPOSES, FOR REPURCHASING OR PAYING ANY SUCH BONDS AND FOR CONSTRUCTING, ACQUIRING AND IMPROVING THE CITY'S COMBINED WATERWORKS, ELECTRIC AND SEWER SYSTEMS (THE "UTILITIES SYSTEM"), INCLUDING ACQUIRING THE NECESSARY FURNITURE, FIXTURES AND EQUIPMENT IN CONNECTION WITH ALL THE ABOVE DESCRIBED ADDITIONS AND IMPROVEMENTS, PAYING THE COSTS OF ISSUANCE, FUNDING A RESERVE FOR THE BONDS, AND PROVIDING WORKING CAPITAL, SAID BONDS TO BE PAYABLE FIRST, FROM THE NET INCOME AND REVENUES OF THE COMMUNICATIONS SYSTEM AND SECOND, TO THE AMOUNT NECESSARY, FROM A SECONDARY OR SUBORDINATE PLEDGE OF THE REVENUES OF THE UTILITIES SYSTEM.

Shall the City of Lafayette, State of Louisiana (the "City"), issue its communications system revenue bonds in an amount not exceeding One Hundred Twenty-Five Million Dollars ($125,000,000) to run not more than twenty-five (25) years from date of issuance to be sold at par, premium or discount with interest at a rate or rates not exceeding nine per centum (9%) per annum, for the purpose of constructing, acquiring, developing, extending and improving a local communications network that will offer telephone, cable TV, high-speed fiber to the home (FTTH) Internet service and other related services, (the "Communications System") and, should the City determine that any bond proceeds are unnecessary for Communications System purposes, for repurchasing or paying any such bonds and for constructing, acquiring and improving the combined waterworks plant and system, electric power and light plant and system and sewer systems of the City (the "Utilities System"), including acquiring the necessary furniture, fixtures and equipment in connection with all the above described additions and improvements, as established and set forth in the City's then current capital budget adopted after budget hearings held in the

4

manner contemplated by the Home Rule Charter, paying the costs of issuance, funding a reserve for the bonds, and providing working capital, said bonds to be payable from the net income and revenues of the Communications System and to the amount necessary, from a secondary or subordinate pledge of the revenues of the Utilities System?

Based on the results of the special election, the Lafayette City-Parish Consolidated Government Council, on September 6, 2005, adopted Ordinance Number 0-230-2005, which consists of a preamble and eleven articles and which authorizes it to incur debt and issue revenue bonds to fund the creation and operation of a communications system. The proposed communications system would consist of a local network offering telephone, cable television, and high-speed internet services as well as other unnamed communications services that might be added in the future. The ordinance proposes to fund the communications system through the issuance of twenty-five-year revenue bonds, not exceeding $125,000,000.00. Specifically, Section 5 of the preamble provides as follows:

SECTION 5. The City proposes to construct, acquire, extend and improve the Communications System and/or Utilities System[3] and finance all or a part of the costs of the additions and improvements to the Communications System and/or Utilities System, including acquiring the necessary furniture, fixtures and equipment in connection therewith, funding the Reserve Fund, and providing working capital through the sale and issuance of not exceeding One Hundred Twenty-Five Million Dollars ($125,000,000) of Communications System Revenue Bonds, Series 2006 of the City ("the Bonds")[.]

The first challenge to the bond ordinance was filed on October 6, 2005, by Naquin and Eastin, who sued individually and on behalf of all others similarly situated. They filed a "Motion for Judgment Pursuant to La.R.S. 13:5125,"[4] which

_____

[3]"Utilities System" is defined in Section 1.1 of the ordinance as the revenue-producing public utilities system of the City consisting of the combined waterworks plants and system, the electric power and light plant and systems, and sewer system, including any property, rights, and interests in such plants and systems related to their operation.

[4]Louisiana Revised Statutes 13:5125 requires that a motion for judgment be filed by any person or entity seeking to contest or enjoin the issuance of governmental bonds and sets parameters

5

was assigned to division B. The following day, Bellsouth filed a "Motion for Judgment" in accordance with La.R.S. 13:5125, which was assigned to division G. Bellsouth's motion for judgment was set for hearing on November 3, 2005, while Naquin and Eastin's motion for judgment was set for hearing on November 14, 2005. Naquin and Eastin's motion contained the same challenges to the bond revenue ordinance as Bellsouth's motion, but their motion additionally asserted other issues not present in Bellsouth's motion. On October 31, 2005, Naquin and Eastin filed a petition of intervention in Bellsouth's action in order to take advantage of the earlier hearing date; however, they did not voluntarily dismiss the motion that was pending in division B. Naquin and Eastin's intervention was permitted, but only as to those issues commonly shared with Bellsouth.

The Bellsouth motion for judgment was heard on November 3, 2005, and the merits of the controversy were taken under advisement. During the hearing, the district court ruled on the exceptions of peremption and lack of subject matter jurisdiction that had been filed by the City in opposition to Bellsouth's motion for judgment. The City argued in those exceptions that Bellsouth's motion was untimely as it was filed beyond the sixty days allowed for challenges to bond elections. The district court orally overruled the exceptions, finding that the sixty-day window allowed for challenging bond elections under La.Const. art. 6, § 35(A) was inapplicable in the instant case, since the motion challenged the validity of the bond revenue ordinance, and not the bond election. The district court also orally ruled that because the City's exception of lack of subject matter jurisdiction hinged on this peremption issue, it was moot as a result of the finding that the motion for judgment

_____

for the publication of the motion for judgment and hearing date in a newspaper published or in circulation in the governmental area at issue.

6

was not perempted.

The district court issued written reasons for judgment and signed the judgment on November 14, 2005. In its written reasons, the district court first addressed the challenge to the bond ordinance that focused on the provisions seeking to repay the bonds using not only revenue from the new communications system, but also revenue from the City's existing utilities system. Bellsouth and the intervenors argued that the use of residual revenues from the utilities system to repay the bonds violated the various cross-subsidization prohibitions set forth in the Fair Competition Act, La.R.S. 45:844.41, *et seq.* In addition, Bellsouth and the intervenors argued that the bond revenue ordinance violated La.R.S. 45:844.51(A)(1) of the Fair Competition Act by establishing five funds rather than a "single enterprise fund" to be used to account for the services offered by the communications system.

The district court rejected both of these arguments and found that La.R.S. 45:844.52 of the Fair Competition Act provides an applicable exception that allows local governments that own electric, water, gas, and other such utilities to pledge the resources of those utilities to obtain the best available interest rates, terms, and conditions for the bonds it issues. Nevertheless, Bellsouth, relying on La.Civ.Code art. 3165, argued that the instant arrangement did not constitute a pledge under the law, because the ordinance provided for the repayment of bonds using the funds prior to any default occurring, as is required when assets are pledged. However, the district court reasoned that La.Civ.Code art. 3165, which requires such a default, was inapplicable because it addresses the pledged asset itself, and not its fruits. In other words, the district court concluded that the revenue from the utility system, and not the utility system itself, was the subject of the pledge and that the revenue constituted

7

the "fruits" of the utility system.

In reaching this conclusion, the district court found the City's reliance upon La.Civ.Code art. 3168 to be correct, since that article contemplates the pledge of fruits and allows the creditor/pledgee access to those fruits without the necessity of a default occurring. The district court further reasoned that, because La.Civ.Code art. 3133 defines a pledge as a contract, it logically follows that, as with all contracts, the parties are free to contract for any lawful purpose. Accordingly, the district court concluded that, absent any specific prohibitions in the Fair Competition Act regarding how a pledge must operate, the bond issuer (the City) and the future bondholders were not prohibited from agreeing to the operation of the pledge as set forth in the bond ordinance. The district court did reject the City's argument, however, that its use of residual revenues from existing utilities could also be considered a loan under the Fair Competition Act, reasoning that, because the funds are to be deposited into a "Sinking Fund," as opposed to a "Receipts Fund," as is required of loans under the Act, the residual revenues could not be considered as loans.

Regarding Bellsouth's argument that the ordinance failed to comply with the Fair Competition Act's requirement that a single enterprise fund be established, the district court found no such violation. Rather, the district court found that the City was in compliance with this requirement, relying on the statement in Section 4 of the ordinance preamble that promised that the fund would be set up in the future.

On November 14, 2005, the same date that the district court's division G rendered its judgment, Naquin and Eastin appeared in division B, seeking a hearing on the unresolved issues remaining in their motion for judgment. However, on the City's oral motion, the district court dismissed Naquin and Eastin's pending motion

8

for judgment with prejudice. The judgment provided that Naquin and Eastin were enjoined from proceeding in accordance with the provisions of La.R.S. 13:5129[5] and/or La.Code Civ.P. art. 531.[6]

Bellsouth filed a petition for appeal on November 17, 2005, and Naquin and Eastin filed a separate appeal on November 21, 2005. Both appeal petitions were timely filed with the district court pursuant to La.R.S. 13:5128, which requires appeals of suits regarding the validity of bonds to be filed within ten days of the date on which the judgment at issue is rendered. The matters were consolidated upon docketing by this court.

## LAW AND ARGUMENT

## *BELLSOUTH'S APPEAL ISSUES*

**1.  Bond Repayment Under the Fair Competition Act**

The Fair Competition Act establishes the policy of the State of Louisiana with regard to the expansion of cable television, telecommunication, and advanced services in La.R.S. 45:844.42. With regard to local government's involvement in providing such services, the statute provides in pertinent part:

> The legislature finds and declares that it is the policy of this state:
> . . . .
> (6) To ensure that when a local government provides to its inhabitants cable television services, telecommunications services or advanced services, or any combination thereof, and competes with private providers whose activities are regulated by the local governmental entity, the local government does not discriminate against

---

[5]Louisiana Revised Statutes 13:5129 provides that a decree validating a bond issue is conclusive and binding as to all matters that might have been presented and cannot be collaterally attacked in a subsequent suit.

[6]Louisiana Code of Civil Procedure Article 531, regarding *lis pendens*, states that when two or more suits are pending in a Louisiana court or courts on the same transaction or occurrence, between the same parties in the same capacities, the defendant may have all but the first suit dismissed by filing the exception of *lis pendens*. If no exception is filed, the article provides that the first final judgment rendered shall be conclusive of all.

the competing providers of the same services.

> (7) To ensure that when a local government provides to its inhabitants cable television services, telecommunications services or advanced services, or any combination thereof, it will not be precluded from engaging in "bundling" those services or engaging in any other lawful business practice that its private-sector competitors are legally permitted to engage in.

In other words, the private and local government service providers are to compete on a level field when providing the covered services to the public. To that end, the Fair Competition Act provides specific restrictions on the local governmental entity.

The question of whether the Fair Competition Act prohibits the use of utility revenues to repay bonds in the manner provided for in the City's bond revenue ordinance is a question of law that we will determine based upon a *de novo* review of the record. *See Guillot v. La. Gaming Control Bd.*, 98-1461 (La.App. 1 Cir. 10/26/99), 761 So.2d 561; *Foster v. Conagra Poultry Co.*, 95-793 (La.App. 3 Cir. 2/14/96), 670 So.2d 471, *writ denied*, 96-0645 (La. 4/26/96), 672 So.2d 674.

We are guided in our interpretation of the relevant statutes by the special rules that have been enacted by the legislature in La.R.S. 1:1, *et seq*. *See Gregor v. Argenot Great Cent. Ins. Co.*, 02-1138 (La. 5/20/03), 851 So.2d 959. The Louisiana Supreme Court has aptly summarized these guiding principles as follows:

> Louisiana Revised Statute 1:3 provides, in pertinent part, that "[w]ords and phrases *shall* be read with their context and *shall* be construed according to the common and approved usage of the language" and the "word '*shall*' is mandatory." (Emphasis added.) Louisiana Revised Statute 1:4 provided that "[w]hen the wording of a Section [of a statute] is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit." The legislative branch also has provided general rules for interpreting laws in La. C.C. art. 9 *et seq*. *See*, in particular, La. C.C. arts. 9 and 11. We are bound by the language of a relevant law. *Allen v. State, through the Ernest N. Morial-New Orleans Exhibition Hall Authority*, 02-1072, p. 12 (La. 4/9/03), 842 So.2d 373, 381.

*Id.* at 964.

Additionally, we recognize that because La.Const. art. 3, § 15(A) provides, in pertinent part, that "[e]very bill shall contain a brief title indicative of its object[,]" the title of a law may be examined to determine its purpose as well. *Id.* Accordingly, there is no question that "[t]he starting point for the *interpretation* of any statute is the language of the law itself." *Id.* (Footnote omitted).

Examining the statute at issue, we hold that the district court legally erred in its interpretation of the permissible use of pledged utility resources under the Fair Competition Act. We base this holding on our finding that the use of residual utility revenues to repay bonds in advance of any default in repayment of the bonds is not a pledge under the law and violates the cross-subsidization prohibitions[7] found in the Fair Competition Act, particularly La.R.S. 45:844.53(2). *See* La.Civ.Code art. 3165; *Scott v. Corkern*, 231 La. 368, 91 So.2d 569 (1956).

The relevant statute of the Fair Competition Act that is the source of this controversy is La.R.S. 45:844.52, which provides:

> A. The local governing authority may by resolution determine to issue one or more bonds to finance the capital costs for facilities necessary to provide to subscribers one or more covered services.
>
> B. The resolution shall:
>
> (1) Describe the purpose for which the indebtedness is to be created.
>
> (2) Specify the dollar amount of the one or more bonds proposed to be issued.
>
> *C. (1) A bond issued under this Section shall be secured and paid for solely from the revenues generated by the local government from providing the covered services.*[8]

---

[7]*See* La.R.S. 45:844.51(A)(3); La.R.S. 45:844.52(C)(1); La.R.S. 45:844.52(C)(2); La.R.S. 45:844.53(2).

[8]"Covered services" are "telecommunications services, advanced services and cable television services, individually and collectively, and regardless of the technology used to provide

11

(2) A local government may not pay the origination, financing, or other carrying costs associated with the one or more bonds issued under this Section from the general funds or other enterprise funds of the local government. Nothing in this Section shall preclude a local government from using general funds or other enterprise funds to advance funds for the feasibility study prescribed under R.S. 45:844.49 or for start-up costs[9] for the proposed venture, provided that any such funds advanced are repaid by the enterprise fund established under R.S. 45:844.51 at interest rates and on terms and conditions available to private enterprises in the open market.

*(3) Nothing in this Chapter shall preclude a local government that owns and operates electric, water, gas, sewer and other utilities from pledging the resources of such utilities to obtain the best available interest rates, terms and conditions for the bonds necessary to finance the facilities used to provide the proposed covered services.*

(4) Nothing under this Section provides a local governing authority bonding authority in addition to that provided under existing state law.

(Emphasis added.)

Section 9 of the preamble to the ordinance appears to track the language of La.R.S. 45:844.52(C)(3) by purporting to pledge the Residual Revenues of the utility system to obtain a more favorable interest rate. That section reads as follows:

SECTION 9. The Lafayette City-Parish Council and the Lafayette Public Utilities Authority (the "Governing Authority") hereby determines that the pledge of all the Net Revenues, as defined herein, from the Communications System and the Residual Revenues, as defined herein,[10] from the Utilities System as security for payment of the Bonds, is necessary to obtain the best available interest rates, terms and conditions for the Bonds, as provided in Title 45, Section 844.52(C)(3) of the Louisiana Revised Statutes of 1950, as amended[.]

those services, unless otherwise specified in this Chapter." La.R.S. 45:844.43(6).

[9]"Start-up costs" are "those costs reasonably and prudently incurred by the local government (including legal and professional services) in obtaining the feasibility study required under this Chapter, in seeking to obtain assent of the financial market place for funding of the proposed project, and other related costs through the closing of the sale of the bonds or other financing vehicles supporting the provisioning of covered services, and specifically excludes capital costs as defined herein." La.R.S. 45:844.43(18).

[10]Article 1, Section 1.1 of the ordinance provides the definitions to be used when considering the context of the ordinance. That section contains a definition of "Net Revenues," but contains no definition of "Residual Revenues."

However, Section 10 of the preamble to the ordinance seems to conflict with the provisions of La.R.S. 45:844.52(C)(1) in that it purports to provide a source of payment other than the revenues generated by the Communications System.

> SECTION 10. The Bonds will be payable primarily from the Net Revenues and, to the extent such Net Revenues are insufficient to meet the Bond Service Requirement of the Bonds, from the Residual Revenues. The Bonds constitute Subordinated Indebtedness of the Utilities System, as defined and provided for in the General Utilities Revenue Bond Ordinance No. 0-122-2004, adopted by the Governing Authority on June 29, 2004[.]

Article IV of the ordinance sets forth in more detail the contemplated bond security and repayment scheme contemplated in Sections 9 and 10 of the preamble to the ordinance. Article IV is entitled "SOURCE OF PAYMENT OF BONDS; SPECIAL BONDS OF THE ISSUER" and reads in it entirety as follows:

> SECTION 4.1. Bonds not to be Indebtedness of the Issuer. The Bonds shall not be or constitute general obligations or indebtedness of the Issuer within the meaning of the Constitution of Louisiana, but shall be payable solely from and secured by a lien upon and a pledge of the (i) Net Revenues of the Communications System, in the manner and to the extent herein provided, and (ii) Residual Revenues. No Bondholder shall ever have the right to compel the exercise of the ad valorem taxing power of the Issuer or taxation in any form on any real or personal property to pay such Bonds or the interest thereon, nor shall any Bondholder be entitled to payment of such principal and interest from any other funds of the Issuer other than Net Revenues and Residual Revenues in the manner and to the extent herein provided.
>
> SECTION 4.2. Security for Bonds. The payment of the principal of, premium, if any, and interest on the Bonds shall be secured forthwith equally and ratably by an irrevocable lien on (i) the Net Revenues, all in the manner and to the extent provided herein, prior and superior to all other liens or encumbrances on the Net Revenues, except as otherwise provided herein, and the Issuer does hereby irrevocably pledge the Net Revenues to the payment of the principal of, premium, if any, and interest on the Bonds and (ii) to the extent the Net Revenues, excluding loans under Section 4.3 hereof, are insufficient to meet the Bond Service Requirement on the Bonds, the Residual Revenues, before their use for any other purpose set forth in Section 5.1(e)(iv)(C) [sic] of the Utilities Bond Ordinance.
>
> Notwithstanding any other provision of this Ordinance, the pledge of Residual Revenues set forth herein (but only until such Residual

13

Revenues are released from the capital additions fund established under the Utilities Bond Ordinance) shall be subordinate to the pledge created in Section 4.2 of the Utilities Bond Ordinance.

SECTION 4.3. Loans. In accordance with the Communications Act, the Utilities System is permitted to make loans to the Communications Division, such loans to be administered by the Utilities Department, provided such loans meet applicable law. Such loans will be deposited in the Receipts Fund and can be used to make all payments from the Receipts Fund as set out in this Ordinance.

SECTION 4.4. Special Obligations of the Utilities System. The Bonds are Subordinated Indebtedness. As such the Residual Revenues of the Utilities System are hereby pledged as security for the payment of the principal of, premium, if any, and interest on the Bonds. In addition to the pledges set forth in this Ordinance, the Utilities Bond Ordinance secures the Bonds as Subordinated Indebtedness. The Consulting Engineer for the Utilities System, as designated under the Utilities Bond Ordinance, shall annually review the Issuer's rates for Utilities System services to ensure that the Issuer meets its rate covenant, as set out in Section 7.4 hereof.

As we appreciate the proposed payment structure, the financial obligations incurred by the City in issuing the Communications System Revenue Bonds are to be first satisfied from the Net Revenues of the Communications System and, if the Net Revenues are not sufficient to meet the current obligation, the balance is to be satisfied from the Residual Revenues of the Utilities Systems. However, because the Residual Revenues of the Utilities Systems are already pledged to pay other indebtedness pursuant to a previously enacted City Utilities Bond Ordinance, only that portion of the Residual Revenues not necessary to satisfy the obligation under the former bond ordinance may be used to satisfy the obligations of the Communications System. Thus, the contemplated use of the Residual Funds of the Utilities Department clearly exceeds the stated directive of La.R.S. 45:844.52(C)(1), which requires that the issued bonds "be secured and paid for *solely* from the revenues generated by the [City] from providing the covered services" (emphasis added), and of La.R.S. 45:844.52(C)(3), which expressly limits the pledge of

14

resources[11] from an existing utilities department "to obtain[ing] the best available interest rates, terms and conditions for the bonds necessary to finance the facilities used to provide the proposed covered services."

Bellsouth argues that the district court erred in finding this mechanism a permissible application of the *pledge* of existing utility resources, as is contemplated by La.R.S. 45:844.52(C)(3). Specifically, it argues that the district court failed to recognize that, rather than the bond ordinance authorizing the contemplated "pledge of resources" allowed by La.R.S. 45:844.52(C)(3), the bond ordinance impermissibly authorizes an *assignment* of revenue from other utility divisions and that such assignment violates the cross-subsidizing prohibition found in La.R.S. 45:844.53(2) which provides that "[a] local government may not cross-subsidize its covered services with tax dollars, *income* from other local government or utility services, below-market rate loans from the local government or any other means." (Emphasis added.) It contends that the bondholders should have access to any such pledged revenue from these other utilities only after there has been a default in payment and only after the requirements are met for proceeding against pledged property, according to the law on a creditor's rights to pledged property set forth in La.Civ.Code art. 3165. We agree.

Louisiana Constitution Article 6, Section 37(A) specifically sets forth what a political subdivision may pledge to secure an indebtedness arising from the issuance of bonds:

> The legislature by law may authorize political subdivisions to issue bonds or other debt obligations to construct, acquire, extend, or improve any revenue-producing public utility or work of public improvement. The bonds or other debt obligations may be secured by mortgage on the lands, buildings, machinery, and equipment *or by the pledge of the income and revenues* of the public utility or work of public

---

[11]We also note that the term "resources" is not defined in the Fair Competition Act.

15

improvement. They shall not be a charge upon the other income and revenues of the political subdivision.

(Emphasis added.)

A "pledge" is defined as a contract between a debtor and creditor by which the debtor gives something to the creditor as security for this debt. La.Civ.Code art. 3133. According to La.Civ.Code art. 3165, a true pledge of assets cannot be disposed of without compliance with the formalities of an event of default and the attainment of a judgment:

> The creditor cannot, in case of failure of payment, dispose of the pledge; but when there have been pledges of stock, bonds or other property, for the payment of any debt or obligation, it shall be necessary before such stocks, bonds or other property so pledged shall be sold for the payment of the debt, for which such pledge was made, that the holder of such pledge be compelled to obtain a judgment in the ordinary course of law, and the same formalities in all respects shall be observed in the sale of property so pledged as in ordinary cases; but in all pledges of movable property, or rights, or credits, stocks, bonds or other movable property, it shall be lawful for the pledger to authorize the sale or other disposition of the property pledged, in such manner as may be agreed upon by the parties without the intervention of courts of justice; *provided*, that all existing pledges shall remain in force and be subject to the provisions of this act.

*Id.*

Nevertheless, the district court concluded that because the "things" being pledged by the City in the ordinance are the fruits of the existing utilities system, the requirement of default is not necessary. In reaching this determination, the district court relied on La.Civ.Code art. 3168, which provides in part that "[t]he fruits of the pledge are deemed to make a part of it, and therefore they remain, like the pledge, in the hands of the creditor[.]" We find any reliance on this article to be misplaced. The clear language of La.Const. art. 6, § 37(A) establishes that the pledge itself is the "income and revenues" of the public utility. The income and revenues cannot be the pledge and, at the same time, the fruits of the pledge. Thus, we reject the premise

16

that the "things" being pledged in this case are the *fruits* of the pledged assets.

We agree with Bellsouth that the bond repayment scheme at issue is more akin to an assignment rather than a pledge. We duly note Bellsouth's reliance on the Louisiana Supreme Court's language in *Scott*, 231 La. 368, 91 So.2d 569, to distinguish between an assignment and pledge. According to *Scott*, an assignment is a species of sale that provides for the immediate vesting of title in the transferee, while a pledge "is the antithesis of an assignment[,]" allowing the debtor to retain the title of the thing pledged, while the creditor receives, either actually or constructively, security for payment of a debt. *Id*. at 571. As stated in *BG Wire Rope & Slings, Inc. v. Dyson*, 03-2390, pp. 4-5 (La.App. 1 Cir. 9/17/04), 884 So.2d 688, 691, *writ denied*, 04-2993 (La. 3/24/05), 896 So.2d 1045:

> An assignment of an asset as payment, and the pledging or offering of security to be held until a loan is paid, are not the same transaction and do not produce the same consequences. An assignment transfers title of the asset to the assignee, who then has the immediate right, upon signing of the agreement, to pursue payment of the loan from the assigned asset. With a pledged asset, the creditor must wait until the debtor defaults on the loan before the asset may be used for payment.

Therefore, the failure of the City's ordinance to provide for a requirement of default before accessing residual revenues to repay bonds is not a pledge of assets and is a prohibited cross-subsidization pursuant to La.R.S. 45:844.53(2).

Language throughout the ordinance clearly establishes that the City contemplates using the Residual Revenues as more than a vehicle by which it can obtain better financial terms on the bonds as contemplated by La.R.S. 45:844.52(C)(3). Section 10 of the preamble to the ordinance allows for normal bond repayment obligations to be met through the use of residual revenues from the City's existing utilities system, in direct contravention of La.R.S. 45:844.53. Rather than serve as a security device by way of pledge, the Residual Revenues are being used to

17

make up any deficiencies between the bond repayment amounts and the revenues from the covered services, and this prior to any event of default. This is further evidenced by the requirement set forth in Article X, Section 10.1 of the ordinance that residual revenues be deposited in a Sinking Fund prior to bond payments being due, as well as by Article VII, Section 7.1 which provides that the new communications system and existing utilities system will be operated "in such manner in order to insure the continued availability of Net Revenues and Residual Revenues to pay all costs acquired by this Ordinance." Further, Article VII, Section 7.4 of the ordinance states that the City will ensure that residual revenues are available to pay any differences between net revenues generated by the existing utilities system and any bond amounts that are due by raising the rates of its other utility services in the amount necessary to ensure that the principal and interest payments can be made.

As previously stated, we find these provisions to be in direct derogation of the cross-subsidization prohibitions found throughout the Fair Competition Act. The Fair Competition Act, as the name expresses, is intended to provide a framework for local governments to fairly compete with private providers and carries out the goal of the legislature to police the local governments' access to their resources of revenues from existing utilities and taxes in such a manner that the use of these resources will not impede fair competition. *See J.M. Brown Constr. Co. v. D & M Mech. Contractors, Inc.*, 275 So.2d 401 (La.1973) (explaining that the general purpose and object of the law must be kept in mind and statutes must be given such fair and reasonable interpretation as to support the purpose and object for which the law was enacted).

## 2. Violation of the Single Enterprise Fund Provision

We find that in order to assist in the prevention of cross-subsidization, the Fair Competition Act also requires the creation of a single enterprise fund. Louisiana

Revised Statutes 45:844.51 provides, in this regard:

> A.  A local government that provides one or more covered services under this Chapter:
>
> (1)   Shall establish a single enterprise fund entitled the "communications services enterprise fund" to account for the local government's operations of covered services.
>
> (2)   Shall adopt operating and capital budgets for the local government's covered services.
>
> (3)  Except as provided in R.S. 45:844.52(C)(2), or subject to rules established under R.S. 45:844.55(D), may not transfer any appropriation or other balance in any other enterprise fund established by the local government to any enterprise fund established by the local government under this Section.
>
> B.  The restrictions on transfers described in Paragraph (A)(3) do not apply to transfers made by a local government between other enterprise funds established by the local government.

The sections of the Fair Competition Act referenced in La.R.S. 45:844.51(A)(3) are La.R.S. 45:844.52(C)(2), which allows for the use of enterprise funds to advance start-up costs and feasibility study costs, and La.R.S. 45:844.55(D), which mandates that the Louisiana Public Service Commission adopt rules to define and govern equitable cost allocation and to provide safeguards to ensure against cross-subsidization, *i.e.*, "cost allocation and affiliate transaction rules."

Section 4 of the preamble to the bond ordinance appears to directly reference the City's obligation under La.R.S. 45:844.51(A)(1) in that it provides:

> SECTION 4. In accordance with Title 45, Section 844.50 [sic] of the Louisiana Revised Statutes of 1950, as amended, the Issuer shall establish a single enterprise fund entitled the "communications services enterprise fund" to account for the City's operation of the Communications System[.]

However, despite recognizing this obligation in the preamble and stating its intention to do so, the City took no steps to create such fund in the body of the ordinance. Instead, in Article V, Section 5.1 of the bond ordinance the City created five separate

funds: the "Receipts Fund," the "Operating Fund," the "Sinking Fund," the "Reserve Fund," and the "Capital Additions Fund." The language of La.R.S. 45:844.51(A)(1) states that the creation of such fund "shall" take place. To the extent that the ordinance fails to create this fund, we find that the ordinance violates La.R.S. 45:844.51 of the Fair Competition Act.

### THE CITY'S APPEAL ISSUES

### 1. Exceptions of Peremption and Subject Matter Jurisdiction

In answer to Bellsouth's appeal, the City contends that the district court erroneously overruled its exceptions of peremption and subject matter jurisdiction. The premise of the City's argument is that Bellsouth's challenge to the ordinance in the district court was too late, since it was filed more than sixty days after the bond election on the proposition was held. The City argues that La.Const. art. 6, § 35(A), as amended, requires that any legal challenge to a bond issue that has been authorized by election must occur within sixty days of the election that is held. The City argues, consequently, that the district court lacked jurisdiction to hear Bellsouth's motion for judgment. We disagree and find no error in the ruling of the district court.

Louisiana Revised Statutes 13:5121-5127 (Bond Validation Law) sets forth the exclusive remedies for legally challenging the validity of governmental bonds. *Smith v. Parish of East Baton Rouge*, 515 So.2d 632 (La.App. 1 Cir.), *writ denied*, 515 So.2d 1100 (La.1987); *Cent. La. Bank & Trust Co. v. Avoyelles Parish Police Jury*, 493 So.2d 1249 (La.App. 3 Cir. 1986). The Louisiana Constitution grants jurisdiction to the district courts to decide these challenges within specified time frames that are set forth in La.Const. art. 6, § 35.

What is immediately apparent upon examination of La.Const. art. 6, § 35 is the fact that it contains two sub-parts—Section 35(A), which is titled "Contesting

Election; Time Limit," and Section 35(B), which is titled "Contesting Ordinance or Resolution; Time Limit." Section 35(A) states the following, regarding challenges to a bond election:

> Section 35. **(A) Contesting Election; Time Limit.** For sixty days after promulgation of the result of an election held to incur or assume debt, issue bonds, or levy a tax, any person in interest may contest the legality of the election, the bond issue provided for, or the tax authorized, for any cause. After that time no one shall have any cause or right of action to contest the regularity, formality, or legality of the election, tax provisions, or bond authorization, for any cause whatsoever. If the validity of any election, tax, debt assumption, or bond issue authorized or provided for is not raised within the sixty days, the authority to incur or assume debt, levy the tax, or issue the bonds, the legality thereof, and the taxes and other revenues necessary to pay the same shall be conclusively presumed to be valid, and no court shall have authority to inquire into such matters.

Section 35(B), on the other hand, states:

> **(B) Contesting Ordinance or Resolution; Time Limit.** Every ordinance or resolution authorizing the issuance of bonds or other debt obligation by a political subdivision shall be published at least once in the official journal of the political subdivision or, if there is none, in a newspaper having general circulation therein. For thirty days after the date of publication, any person in interest may contest the legality of the ordinance or resolution and of any provision therein made for the security and payment of the bonds. After that time, no one shall have any cause of action to test the regularity, formality, legality, or effectiveness of the ordinance or resolution, and provisions thereof for any cause whatsoever. Thereafter, it shall be conclusively presumed that every legal requirement for the issuance of the bonds or other debt obligation, including all things pertaining to the election, if any, at which the bonds or other debt obligation were authorized, has been complied with. No court shall have authority to inquire into any of these matters after the thirty days.

Applying two of the basic principles of statutory interpretation—that the words of a law must be given their generally prevailing meaning and that, when the words are ambiguous, their meaning must besought in the context in which they occur and in regard to the text of the law as a whole—we find no merit to the City's argument that Section 35(A) applies to Bellsouth's challenge to the bond ordinance. *See* La.Civ.Code arts. 11, 12. On the face of Sections 35(A) and 35(B), it is clear that

21

there are indeed two separate peremptive periods made available for challenges to elections and ordinances, respectively. *Lege v. Vermilion Parish Sch. Bd.*, 360 So.2d 664 (La.App. 3 Cir. 1978) (citing *Andrieux v. East Baton Rouge Parish Sch. Bd.*, 254 La. 819, 227 So.2d 370 (La.1969)). As we recognized in *Lege,* Section 35(A) establishes a peremptive period during which suits to contest the legality and validity of bond and tax *elections* shall be brought. Likewise, we have previously recognized Section 35(B) provides a thirty-day peremptive period for filing a challenge to a resolution authorizing the issuance of a governmental bond. *See Cent. La. Bank & Trust. Co.*, 493 So.2d 1249. Application of the constitutional peremptive statutes as suggested by the City would lead to absurd results and would require the court to ignore the clear language of these provisions.

In addition, we find that the Fair Competition Act itself, in La.R.S. 45:844.50 and La.R.S. 45:844.52, requires both an election and subsequent adoption of a bond resolution or ordinance regarding any authorized bond issuance. These different stages of the bond issuance process further signify the legislature's intent to provide for two steps in the municipal bond issuance process as well as separate challenges to each of these steps. In fact, Article XI, Section 11.5 of the City's ordinance provides for a thirty-day period after publication wherein "any person of interest may contest the legality of [the] ordinance."

In this case, Bellsouth filed its motion for judgment in accordance with La.R.S. 13:5125, within thirty days of the City's published notice of the bond ordinance on September 9, 2005. Thus, the challenge to the bond ordinance was timely. *See* La.Const. art. 6, § 35(B). The rulings of the district court dismissing the exceptions of peremption and lack of subject matter jurisdiction are, accordingly, affirmed.

2.     **The District Court's Refusal to Consider the Proffered Evidence from the Public Service Commission Hearings**

The City also argues that the district court erred in not considering its proffered evidence with regard to the actions before the Louisiana Public Service Commission. The district court is given vast discretion in its decisions on evidentiary rulings and its decision to admit or exclude evidence will not be reversed on appeal unless it is clearly shown that it has abused that discretion. *Foster v. Rabalais Masonry, Inc.*, 01-1394 (La.App. 3 Cir. 3/6/02), 811 So.2d 1160, *writ denied*, 02-1164 (La. 6/14/02), 818 So.2d 784. Although we disagree with the district court's conclusions of law and findings on several issues, we find that substantial evidence was presented to the district court during its hearing on the motion for judgment, such that it was not an abuse of discretion for the district court to accept only as proffered evidence the general orders of the Louisiana Public Service Commission and briefs filed by Bellsouth in administrative hearings.[12]

### 3.     Use of Residual Revenues as Loans

Finally, the City asserts that the district court erred in not concluding that the use of Residual Funds from the Utilities Department constituted a permitted loan. We recognize that the City could loan the Communications Services funds derived from other sources so long as the loan is "at interest rates and on terms and conditions available to private enterprises in the open market." La.R.S. 45:844.52(C)(2). In fact, Article IV, Section 4.3 of the ordinance permits loans from Utilities System to Communications System "provided such loans meet applicable law." However, a clear reading of the ordinance as a whole establishes that the section is to be read independently of the other provisions of the ordinance setting forth the use of the

---

[12]We further note that La.R.S. 45:844.53(4)(c)(iii) provides that "[n]othing in this Subparagraph shall authorize local governments to engage in cross-subsidizations prohibited by this Chapter or other pricing in violation of federal or state law, *including rules of the Louisiana Public Service Commission.*" (Emphasis added.)

Utilities System's Residual Funds. Thus, we find no error in the district court's refusal to categorize the repayment scheme set forth in the ordinance as a loan.

## *NAQUIN AND EASTIN'S APPEAL ISSUES*

**1.     Motion for Extension of Time to File Untimely Brief**

Naquin and Eastin filed a petition to appeal the district court judgment entered on November 14, 2005, that dismissed their motion for judgment pending in division B. According to La.R.S. 13:5128, a petition for appeal from the final judgment of the district court on a bond validation issue must be filed with the district court within ten days of the date the judgment is entered. In addition, the appeal is allowed only if the party taking the appeal has (1) the record certified to the proper appellate court and (2) his brief filed in the proper appellate court *within twenty days* from the date on which the judgment of the district court is entered, unless a shorter time is ordered by the appellate court. *Id.* In this case, twenty days from November 14, 2005, was Sunday, December 4, 2005. Because Sunday is a legal holiday, Naquin and Eastin's appellate brief was to have been filed in this court no later than December 5, 2005, and the record was to have been certified to this court by this date as well. *See* La.R.S. 1:55(A)(1); La.Code Civ.P. art. 5059. The district court record was certified by the district court on December 1, 2005, and lodged in this court on December 6, 2005. Naquin and Eastin's brief, however, was filed in this court on December 7, 2005, two days past the twenty-day deadline required for the filing of the brief under La.R.S. 13:5128.

Naquin and Eastin filed a motion requesting an extension of time to file their brief past the twenty-day time limit set forth in La.R.S. 13:5128. In addition, the City filed a motion to dismiss the appeal and an alternative exception of lack of subject matter jurisdiction based on the untimely filing of the brief.

24

We are bound by the language of a relevant law for purposes of statutory construction. *See Gregor*, 851 So.2d 959. Louisiana Revised Statutes 13:5128 states, in part:

> No appeal to the court of appeal . . . *shall* be allowed unless the petition therefor is filed within ten days from the date on which the judgment of the court is entered and *only* if the party taking the appeal has the record certified to the proper appellate court and his brief filed therein within twenty days from the date on which the judgment of the court is entered, or such shorter time as may be required by the appellate court.

(Emphasis added.)

In legislation, "[t]he word 'shall' is mandatory[.]" La.R.S. 1:3. This court is without authority to disregard the clear and unambiguous language of La.R.S. 13:5128. *See* La.R.S. 1:4. The record reflects that Naquin and Eastin have failed to perfect a timely appeal in accordance with La.R.S. 13:5128. The appeal is not properly before this court and is, therefore, dismissed.

## DISPOSITION

For the foregoing reasons, we reverse the judgment dismissing the motion for judgment filed by Bellsouth Telecommunications, Inc. and enjoin the Lafayette City-Parish Consolidated Government from issuing the bonds authorized by Ordinance Number 0-230-2005 pending compliance with applicable law as set forth in this opinion. We assess all costs of this appeal to the Lafayette City-Parish Consolidated Government to the extent allowed by law. We further dismiss the appeal of Elizabeth W. Naquin and Matthew B. Eastin as untimely at appellants' cost.

**REVERSED IN PART; RENDERED IN PART; AND DISMISSED IN PART.**